[No. 12314.  Department One.  March 12, 1915.]

JAMES E. FAUCETT, *Respondent*, v. NORTHERN CLAY
COMPANY, *Appellant*.[1]

SPECIFIC PERFORMANCE—CONTRACTS—CERTAINTY. The rule that specific performance of an executory contract will not be decreed unless all its terms are certain does not apply to a contract partly executed which by its terms can be made certain.

LANDLORD AND TENANT—LEASE—CERTAINTY—TERM TO BE AGREED UPON—"YEARLY RENTAL" — SPECIFIC PERFORMANCE. A contract of lease providing for a renewal at a "yearly rental" at a rent to be agreed upon or fixed by arbitration, for a term to be agreed upon, is not so uncertain as to warrant refusal of specific performance; since a term at a "yearly rental" was for at least two years; and the court could fix a reasonable term under all circumstances, if either party captiously refused to do so; especially in view of partial performance, and valuable consideration to the lessor in regard to the use of the land for factory purposes, and agreements by the lessee to restore the land to its original condition upon abandonment or termination of the lease, with the right to remove all improvements.

Appeal from a judgment of the superior court for King county, Albertson, J., entered July 6, 1914, in favor of the

[1]Reported in 146 Pac. 857.

plaintiff, upon dismissing defendant's cross-complaint, in an action for equitable relief, tried to the court. Reversed.

*Paul B. Phillips* and *I. B. Knickerbocker* (*Milo A. Root*, of counsel), for appellant.

*M. E. Brewer* and *Jno. Mills Day*, for respondent.

CHADWICK, J.—On January the 24th, 1910, the respondent and appellant entered into a contract of which the following is a copy:

"It is agreed between James E. Faucett, a bachelor of Auburn, King county, Washington, and the Northern Clay Company, a corporation of the city of Auburn, that in consideration of the mutual agreements of said parties:

"(1) James E. Faucett consents to the sub-leasing of the tract of land hereinafter described from Buichiro Itabashi, a Japanese of said city of Auburn to said Northern Clay Company until and including the 8th day of March, 1914, and said James E. Faucett waives the covenants in his lease to said Buichiro Itabashi, dated March, 1909, so far as the same require the said Buichiro Itabashi or his assigns to till and cultivate the premises hereinafter described and to keep the same in grass and pasture. The land herein referred to lies in King county, Washington, and is bounded and described as follows, to wit: [Description omitted.]

"(2)   The Northern Clay Company agrees in consideration of the foregoing agreement on the part of said James E. Faucett to pay to said Faucett any and all increase in the amount of taxes that may hereafter be levied against the property which it so subleases over and above the rate of taxation thereon for the year 1908, up to and including the 8th day of March, 1914, and further agrees to defend any and all suits or actions at law against said James E. Faucett that may arise by reason of said subleasing of the above described premises to said Northern Clay Company, and to pay all damages, if any, that may be adjudged against said James E. Faucett in said action.

"(3)   If on or before the expiration of said sub-lease on the said 8th day of March, 1914, the said Northern Clay Company shall desire to abandon its occupancy of the above described premises then it shall forthwith remove from said

premises all improvements thereon placed by it, and shall, at its own expense restore said premises to a cultivable condition as good and satisfactory as at the time of signing this agreement, and shall, in such event, deliver peaceable possession of said premises to said James E. Faucett, his heirs, executors, administrators or assigns upon or before said 8th day of March, 1914.

"(4)  Upon the expiration of said sub-lease on March 8, 1914, the said Northern Clay Company may purchase the said land without the improvements from said James E. Faucett, his heirs, executors, administrators or assigns upon his or their consent and agreement thereto, at such price and upon such terms as may be agreed upon between the parties to such sale and purchase.

"(5)  If upon the expiration of said sub-lease on March 8, 1914, the said James E. Faucett, his heirs, executors, administrators and assigns shall decline to sell said land to said Northern Clay Company, or if the Northern Clay Company shall not purchase at said time, then said Northern Clay Company shall have the right to require a lease from the said James E. Faucett, his heirs, executors, administrators or assigns from thence forward for such period as may then be agreed upon, at a yearly rental then to be agreed upon between the contracting parties: Provided that in any event such lease shall be given to said Northern Clay Company only if it shall then continue to use said premises or other contiguous land for factory purposes. If the said Faucett, his heirs, executors, administrators or assigns, and the Northern Clay Company, its successors or assigns, shall not be able to agree upon a rental value of said premises, then each of said contracting parties shall appoint an arbitrator, and the two arbitrators so appointed shall choose a third arbitrator, and the three arbitrators so appointed shall determine the fair and reasonable rental value of said premises without the improvements, and the said contracting parties shall abide by their decision.

"(6)  At the expiration of such second lease as mentioned in the preceding section of this agreement, the Northern Clay Company, its successors or assigns shall have the absolute right to purchase said premises from said James E. Faucett, his heirs, executors, administrators or assigns at the price and upon the terms to be then agreed upon between

them: Provided that if the contracting parties to such sale and purchase shall be unable to agree upon the value of the same, then each of said parties shall appoint an arbitrator, and the two arbitrators so appointed shall jointly select a third arbitrator, and the three arbitrators so chosen shall determine the fair and reasonable value of said land without the improvements, and the said contracting parties shall abide by their decision.

"(7)   If, on or before the expiration of the said second lease described and provided for in paragraph 5 of this agreement, the said Northern Clay Company, its successors or assigns shall desire to abandon the above described premises without purchasing the same, it shall remove therefrom all improvements thereon forthwith, and shall, at its own expense restore said land to a good and satisfactory cultivable condition and shall thereupon surrender peaceable possession of said premises to said James E. Faucett, his heirs, executors, administrators or assigns.

"Dated at Auburn, Washington, January 24, 1910. James E. Faucett, Northern Clay Company, By Paul S. MacMichael, President."

Appellant took possession under a sublease from the then tenant and fully performed in so far as the first period, that is to say, until the expiration of the lease to the Japanese, the time fixed for a renewal. Appellant paid the Japanese a bonus of $250 for the privilege of taking immediate possession, and used the land as a part of its factory site. Appellant offered to prove that it made valuable improvements upon its own property adjoining, in virtue of the lease, approximating in value $20,000. For the purposes of this opinion, we may rightfully assume that, whatever the value may have been, appellant did make valuable improvements. Just before the expiration of the sublease, appellant notified the respondent that it elected to purchase the land as provided in paragraph four of the lease. Respondent refused to sell the land or any part thereof, whereupon appellant demanded that it have a lease for a continued term, to be agreed upon between the parties as provided in para-

graph five of the lease, and that thereafter it be allowed to purchase the land as agreed upon in paragraph six. The parties negotiated for some time between themselves, but failing to come to an amicable adjustment of their differences, respondent brought this action praying for a cancellation of the contract; that he be given possession of his land, and that his title be quieted as against any claim of interest whatever on the part of the appellant.

Respondent claims that he was fraudulently overreached by the appellant; that the contract as written does not express the contract entered into between the parties; that there was no contract of sale; that he is an ignorant and illiterate man; that he cannot read and write; and that he was not informed of the true terms and character of the contract until after appellant had made a demand for a deed when the sublease from the Japanese was about to expire.

The case came on for trial with issue joined upon all of the material allegations of the complaint and a prayer on the part of appellant for specific performance, when the court held, upon its own suggestion, the suggestion being thereafter incorporated by way of amendment, that the contract was uncertain and incapable of performance and for that reason no recovery could be had. The issue of fraud was not tried out by the court.

Respondent submits a quotation from 36 Cyc. 587, 590:

"The contract must be complete in all its parts; that is to say, it must contain all the material terms, and none of these terms must be left to be settled by future negotiations. It must also be certain; that is to say, each of the material terms must be expressed with sufficient clearness and definiteness to enable the court to ascertain the intent of the parties and to frame its decree in accordance with such intent. The court cannot make a contract for the parties, *ex aequo et bono.* . . .

"An action at law for breach of contract can often be maintained, although some of the terms of the contract are

not established with exactness.   It is otherwise where specific performance is required.   The court, in order that it may frame a decree in accordance with the intent of the parties, must be clearly apprised of that intent in all essential respects.   A greater degree of certainty is required than in actions at law for damages."

This rule is thoroughly established, and if the facts bring the action within it, it would be controlling; but we are of opinion that, whatever the rule may be if applied to an executory contract, it does not apply in its fullness to a contract that is in part executed and which cannot only be made certain, but which by its terms provides a certain and binding way of making it certain.   The only possible ground upon which the judgment of the court below can be sustained is that there is no time fixed as a term for the second lease. But it does provide that it shall be leased "for such a period as may then be agreed upon at a yearly rental then to be agreed upon between the contracting parties."   It provides the manner in which the rental value shall be determined. A contract of this character will not be defeated because the term is not expressed in certain words, for the execution of the contract and its part performance furnishes a consideration for the promise to lease for a future term.   In its essence, the contract, in so far as it is vital to the interest of the parties at the present time, is no more nor less than a contract for a renewal of lease with certain options theretofore agreed upon by the parties.   The proviso to paragraph five of the contract makes it certain that there was a mutual consideration and benefit in the minds of the parties. The testimony shows that respondent had adjoining lands. Respondent bound the company to continue to use certain premises or other contiguous land for factory purposes. The benefit sought by the appellant was to acquire land adjoining its present holdings and factory site.   The benefit reserved by the respondent is evident.   It was to compel a use of the land for factory purposes which would in all

probability enhance the value of his remaining acreage. Moreover, the use of the words that the company should only have a right to lease the land "if it shall then continue to use said premises or other contiguous land for factory purposes," plainly indicates an understanding on the part of the respondent that appellant might build upon the land or otherwise adapt it to its purposes and the necessities of its business. This assumption is further sustained by reference to paragraph seven of the contract, wherein it is provided that if the company "shall desire to abandon the above described premises without purchasing the same, it shall remove therefrom all improvements thereon forthwith, and shall, at its own expense restore said land to a good and satisfactory cultivable condition and shall thereupon surrender peaceable possession."

Coming then to the question of uncertainty as to the terms of the extended lease, paragraph five, upon which the case must turn, is not an agreement for an agreement, but is a contract that the appellant shall have the right to demand a lease at a yearly rental to be agreed upon in the event that respondent declines at that time to sell the land. The contract then being entered into and partly performed, and there being an agreement to lease at a yearly rental, we think it is fundamental that the lease and attornment for a certain term will sustain the right to a continued term, and that a court of equity might, in the absence of all agreement, fix such time as would be reasonable, considering the relative situation and legal rights of the parties. But in the case at bar, we think there is a certainty of which the trial judge failed to take notice. It is the province of courts to construe contracts, not to make them, and if, by any reasonable interpretation, a contract as written can be sustained, it will not be avoided upon the ground of uncertainty, if that which is uncertain can be made certain without doing violence to the general intent and spirit and purpose of the contract when considered as an entire thing. Accordingly it

is held that a lease of doubtful duration is construed most favorably to the tenant. 18 Am. & Eng. Ency. Law (2d ed.), 617; Gear, Landlord & Tenant, § 25. The rule is:

"Every estate which must expire at a period certain and prefixed, by whatever words created, is an estate for years. And therefore this estate is frequently called·a term, *terminus,* because its duration or continuance is bounded, limited, and determined; for every such estate must have a certain beginning and certain end. But *id certum est, quod certum reddi potest:* therefore if a man make a lease to another for so many years as J. S. shall name, it is a good lease for years; for though it is at present uncertain, yet when J. S. ·hath named the years, it is then reduced to à certainty." 2 Blackstone, Commentaries, p. 143.

Consequently when the parties agreed that a lease should be executed and that a time should be agreed upon, they have themselves provided for a method of reducing the term to a certainty, and if either party to the contract captiously or without reason refuses to agree, then will a court of equity fix the term. Where rent is reserved for "a year" or is payable "yearly," or payable "every year," or like terms are used with reference to rent, it is universally held, so far as we are advised, that a tenancy for years is agreed upon and that a tenant is entitled to a lease for at least a term of two years.

"At a yearly rent of £42 payable quarterly" was held to indicate a yearly tenancy. *Doe d. King v. Grafton,* 18 Adol. & E. (N. S.) 495. The words "made payable yearly" were held to be equivalent to the words "payable every year." *Doe d. Shrewsbury v. Wilson,* 5 B. & Ald. 363. A promise to pay "yearly portions" was held to be a promise to pay within two years. *M'Queen v. M'Queen,* 9 U. C. Q. B. 536. In the last case it is said:

"By analogy with cases that have arisen upon leases, where the duration of the term has not been precisely defined, we think it clear that payment could not be enforced till two years at least had expired."

In the case of *Richardson v. Langridge*, 4 Taunt. 128, it is said:

"Here you speak, all along, of an indefinite agreement. If there were a general letting at a yearly rent, though payable half-yearly, or quarterly, and though nothing were said about the duration of the term, it is an implied letting from year to year."

An agreement for a lease to be granted *in futuro* for a term of twenty-one years at a yearly rent payable quarterly, possession being taken thereunder, was held to create a tenancy from year to year. *Doe d. Bailey v. Foster*, 15 L. J. C. P. 263. See, also, Underhill, Landlord and Tenant, par. 94.

It seems to us that the principle just announced is sustained in *Boston Clothing Co. v. Solberg*, 28 Wash. 262, 68 Pac. 715, where an agreement for a lease, reciting that it should run one or more years, was charged with the vice of uncertainty, and it was held that, considering the essential elements of a lease, first, that there must be a definite agreement as to extent and bounds of property leased; second, a definite and agreed term; and third, a definite and agreed price of rental and the time and manner of payment, that the words "one or more years," in the absence of a stipulation or any option in the lease, creates a term of two years. The court said:

"It would seem that the term one or more years in the absence of a stipulation of any option in the lessee, constitutes a term of two years."

The law does not require that the term of a lease should be fixed with absolute certainty in the contract. The law requires no more than that it be prescribed with reasonable certainty. 24 Cyc. 902.

"A lease for no definite term, with an annual rent, which may be payable quarterly or monthly, is a lease from year to year." 24 Cyc. 1028.

"If one demises lands for such term as both parties shall please, this is but a lease at will, because the term is altogether uncertain. But if a man leases his land for years, it is a good lease for two years, because it shall be taken good for such a number with which at least the plural number will be satisfied, and that is with two years." *Bishop of Bath's Case,* 6 Coke (K. B.) 34 b.

If a term is doubtful or cannot be implied, its duration may be ascertained by a consideration of all the circumstances, or may be defined by extrinsic reference. Underhill, Landlord and Tenant, §§ 93, 94; *Horner v. Leeds,* 25 N. J. L. 106. A promise to make a lease at a "yearly rental" at a term to be agreed upon, is as definite and as sufficient to bring it within the rule *id certum est quod certum reddi potest* as an agreement for a lease for "one or more years." A "yearly rental" means the same thing as "a lease for one or more years."

We have treated the contract as a valid subsisting contract. It seems to be entirely fair on its face. No testimony was taken upon the issue of fraud. The case will be reversed, and remanded with directions to the lower court to compel respondent to enter into a lease for a term of two years from and after the 8th day of March, 1914, or for such longer period as the parties may mutually agree upon, and at a rental to be fixed by agreement or by a board of arbitrators as provided in the contract, unless, upon a rehearing of the case, the court sustains the charge that the contract was induced by fraud and is not binding upon him for that reason. It is so ordered.

Morris, C. J., Parker, Holcomb, and Mount, JJ., concur.