[No. 20600.   Department One.   October 13, 1927.]

S. LEILA HOOVER, *as Executrix of the Estate of E. A. Baldwin, Deceased, Appellant,* v. FORD'S PRAIRIE COAL COMPANY, INCORPORATED, *et al., Respondents.*[1]

[1] MINES AND MINING (17)—CONVEYANCES AND CONTRACTS—CONSTRUCTION—LEASE OR LICENSE. A contract granting the right to mine coal, in consideration of royalties to be paid, including an option to purchase, should be construed to be a lease, rather than a license coupled with an interest, where it contains every requisite of a valid lease and bears the imprint of such intent; since options to purchase do not reflect any doubt thereon.

[2] SAME (17)—MINING LEASE—CONSTRUCTION—RESERVATIONS. A reservation in a coal mining lease giving the lessor the right to sell for an excess of the option price "at any time during the life" of the lessor, is personal and terminates upon his death.

[3] DEEDS (42, 46-1)—MINES AND MINING (17)—CONVEYANCES—FEE SIMPLE—RESERVATIONS—WORDS OF INHERITANCE. A reservation in a coal mining lease, giving the lessor the right to mine coal on the land "at any time," while only a personal right at common law when without words of inheritance, in this state passes, on the lessor's death, to his personal representatives; in view of Rem. Comp. Stat., §§ 10552 to 10554, providing that a conveyance to a named grantee, without words of inheritance, carries a fee simple title.

[4] MINES AND MINING (17)—CONVEYANCES— MINING LEASE—VALIDITY—CERTAINTY—PERPETUITIES. A coal mining lease is not void for uncertainty, or violative of the rule against perpetuities, where, liberally construed in favor of the lessee, it provides for continuous operations until the coal is exhausted, except for temporary cessation for not to exceed two years if the coal cannot be marketed at a profit, where there is nothing to show that the coal will not be exhausted long before the rule against perpetuities would take effect.

Appeal from a judgment of the superior court for Lewis county, McKenney, J., entered December 13, 1926, upon findings adverse, in the main, to the appellant. Modified.

[1]Reported in 259 Pac. 1079.

*Butler & Weiss,* for appellant.

*C. D. Cunningham.* for respondents.

TOLMAN, J.—Appellant brought suit, as the personal representative of one E. A. Baldwin, deceased, to obtain a construction of and to establish certain rights under two written contracts made by her testator in his lifetime. From a judgment adverse to her claim, except as to a minor matter, she has appealed.

It appears that Baldwin, in his lifetime, was the owner of a certain one hundred and sixty acre tract of land in Lewis county, Washington, under which were known deposits of coal, extending on under property adjoining. Respondents, the owners of the adjoining land, had begun to develop and mine coal from their own property, perhaps as early as 1911 or 1912. They erected buildings, installed machinery, sank a shaft; and when the coal measure was reached, they drifted thereon toward the Baldwin property, mining and marketing their coal as the development made that possible. Whether, up to the time of the making of the contracts here to be considered, the underground workings were made only for the purpose of mining their own property, or were constructed at greater expense with a view to the mining of the coal from the Baldwin property, is not entirely clear from the record, but our conclusions are such that we think that question is immaterial. In any event, the respondents' workings had been extended up practically to the Baldwin line at the time of contracting, and they were facing an early end to their operations, unless they secured the right to continue into the Baldwin lands.

The first contract is dated August 18, 1917, is extremely informal, and clearly contemplates that a more

formal contract would be made, if the mining of the Baldwin lands was to continue for any considerable length of time. No question is now raised upon which that contract throws any light. Later, on January 17, 1922, the contract which we are now asked to construe was executed, and it entirely superseded the first contract. Respondents continued operations under this contract until after the death of Mr. Baldwin and the admission of his will to probate. Thereafter, appellant, concluding that there was unpaid royalty due and that Mr. Baldwin's death affected the situation, made certain demands upon the respondents, which were not complied with, and thereupon she brought this action, seeking:

"First: That the agreements attached hereto and marked Exhibits 'A' and 'B' be construed and the basis for the computation of royalties determined and the time for the termination of said agreement and the rights and duties of the defendants upon such termination ascertained.

"Second: That this Honorable Court enter its finding herein that the said contract or agreement has terminated and that said defendants surrender and deliver possession of said premises to this plaintiff.

"Third: That the defendants, and each of them, be ordered to file an account of all of the tons or mining cars of coal mined from the premises of E. A. Baldwin, deceased, hereinbefore described, and of all the payments of royalty thereon made to the said deceased, or to any person in his behalf under said mining agreement.

"Fourth: That the said defendants, and each of them, be directed and required to pay to your petitioner the sum or sums ascertained to be due and payable as royalties for the coal so mined and heretofore unaccounted for.

"Fifth: That this Honorable Court enter its findings herein that the plaintiff, as executrix of the estate of E. A. Baldwin, deceased, has elected to forfeit and

determine the agreement set forth herein as Exhibit 'B' and by these presents does so elect to forfeit and determine said agreement and that said defendants, and each of them, be required to surrender up and deliver possession of said premises to this plaintiff.

"Sixth: For costs and disbursements herein, and for such other and further relief as to the Court seems just in the premises."

During the course of the trial below, the parties reached an agreement as to the amount of royalty due, and a judgment in favor of appellant for the stipulated sum was rendered. Neither party has appealed from or now questions that recovery, and the only questions here presented have to do with the construction of other features of the contract not affecting the royalty.

The material parts of the contract are as follows:

"WITNESSETH: That the said party of the first part, for and in consideration of the royalties hereinafter specified, does hereby give to the parties of the second part, their heirs and assigns, the right and privilege to develop and mine coal upon the northeast quarter (NE¼) of section Thirty (30), in Township Fifteen (15), North of Range Two (2), West of W. M., in Lewis county, Washington. That said second parties have the right to erect, construct and maintain any and all buildings, tram-ways, road-ways, and such other ways or means as they may deem necessary in order to develop and mine coal, upon the said described premises; also to use any and all down timber on said premises by second parties.

"That the said second parties shall immediately enter upon said premises for the above described purposes and that they shall continue to develop or mine coal as long as the market for coal justifies; but they shall not cease developing or mining coal on said premises for a longer period than two years, at any one time.

"In consideration of the foregoing rights, the said parties of the second part agree to pay to the first

party the sum of 10c per ton or mining car of coal, which second parties may mine from said premises, and that said 10c per ton or mining car of coal, and for each and every ton or mining car of coal so mined shall be paid on or before the 15th day of each and every month, while said second parties are mining upon said premises, and that said sums so to be paid, are to be paid to party of the first part, the first payment to be on February 15th, 1922.

"Provided, However, that the party of the first part does hereby reserve the right to mine for coal upon said premises, at any time; but in that event, that he shall either pay to second parties a reasonable compensation for all openings of mines they may have developed on said premises, or second parties may have the right and option to continue to mine where they have made said openings for coal, and clean the same up.

"It is further agreed and distinctly understood by and between the parties hereto, that the said parties of the second part have the right to purchase the above described premises for the sum of twenty thousand ($20,000) dollars, at any time during the life of this agreement, in the following manner, to-wit:  . . .

[Here follow the detailed terms of how the purchase price shall be paid if the option be exercised, and the like, which are omitted because no attempt has ever been made as yet to exercise the option, and no questions are raised which the omitted matter would affect.]

"Provided, however, and it is distinctly understood by and between the parties hereto, that the said first party reserves the right to sell and convey the above described real property to any other person or persons at any time during the life of first party; but that said premises are to be sold for more than twenty thousand ($20,000) dollars.

"It is further agreed and distinctly understood by and between the parties hereto that should said first party die before said second parties, their heirs or

assigns, shall have fully paid for said premises, then,. the said second parties, their heirs or assigns, shall have the right to select such forty acre tract or tracts for which there has been paid and deposited a sufficient. amount of money at the rate of five thousand ($5,000) dollars per forty acres, and said bank upon demand by said second parties, their heirs or assigns, shall deliver to said second parties, their heirs or assigns,. the deed or deed for such forty or forties, which they may so select, but said second parties, their heirs or assigns, shall continue to pay the balance to said bank. of said consideration or purchase price of the whole of said premises and according to the above and fore- going terms.

"It is further agreed and distinctly understood by and between the parties hereto, that in the event that the party of the first part should wish to sell the above described premises, during the life of first party, and should said second parties have made any openings for the mining of coal on said premises, then, the said. parties of the second part shall have the right to con- tinue and mine said openings or to be compensated in a just amount for the work and labor expended and material furnished in the making and developing of said openings.

"It is further agreed and distinctly understood by and between the parties hereto that said first party,. his heirs or assigns, shall pay all taxes, assessments. and impositions levied or assessed against said prop- erty or any part thereof at the time the same shall be- come due and payable.

"It is further agreed and distinctly understood that. no extension of time of payment or waiver of default. in the payment of any installments of the purchase price due on this contract in the event of the purchase of said premises, shall affect the right of the first party to require prompt payment of any subsequent install- ment of said purchase price or to declare a forfeiture for non-payment thereof.

"Time is of the essence of this contract and in case of failure of the said second parties, their heirs or assigns, to make either of the payments or perform.

any of the covenants on their part, this contract shall be forfeited and determined at the election of the said first party; and the said second parties, their heirs or assigns, shall forfeit all payments made by them on this contract, and all rights acquired thereunder, and such payments shall be retained by the said first party, his heirs or assigns, as liquidated damages, and he or they shall have the right to re-enter and take possession of said land and premises, and every part thereof.

"Executed in duplicate this 17th day of January, 1922."

[1] The appellant seems to assume that the contract in question is a mere license rather than a lease with an option to purchase, but cites no authority tending to support that view; while respondents do not trouble to enquire whether it be one or the other, contenting themselves with the argument that if it be a license, it is coupled with an interest, and is therefore irrevocable.

We have not made an exhaustive search of the authorities upon this point, because on its face the instrument seems to have every requisite of a valid lease and to bear the imprint of the intention of the parties that it should be so construed. An option to purchase is so well recognized as a proper matter to incorporate in a modern lease as not to reflect any doubt upon its character. Rather than to unduly lengthen this opinion by discussing the somewhat technical holdings of the various courts as to what is necessary to constitute a license coupled with an interest, we feel safe in holding that this is a lease with an option to purchase.

The remaining questions can, we think, be discussed under two heads.

(1) Are the reservations as to the right of the lessor to mine coal and to sell for an excess of the option price mere personal covenants, which he alone might exercise during his lifetime, or do they extend

to his heirs, administrators, executors and assigns, so that the appellant, as executrix, may exercise them?

[2] As to the second reservation, unless we are to totally disregard the language used, "at any time during the life of first party," there can be but one answer. No reason is advanced why these words should be disregarded. The lessor was presumably competent to contract, and he expressed his intention in language which permits of no construction. Having limited his right of sale to his own lifetime, however unwisely, the courts cannot do other than to uphold the plain language of the contract.

[3] In the first reservation as to the right to mine, the language is "the party of the first part does hereby reserve the right to mine for coal upon said premises, at any time;" and the law must determine whether that was a personal right which died with the lessor, or otherwise.

"Where a reservation does not contain words of inheritance, it exists only for the life of the grantor." 18 C. J. 343.

"A right will not be held to have been reserved as appurtenant to land of which it is a part where it is a mere personal reservation or license in favor of the owner, as for example the right to mow and cultivate a strip of land. However, the question whether a right reserved, excepted, or created is one which runs with or is annexed to the land or is one of a temporary or personal character is not ordinarily to be determined by the use of either of the words 'reservation' or 'exception'; but the intent of the parties is to be ascertained by looking to the entire instrument and the circumstances attending the transaction. A reserved right in a conveyance which is not in its nature temporary or personal will be held to run with the land in the absence of some controlling provision to the contrary." 18 C. J. 351.

"A reservation is the creation in behalf of the grantor of a new right issuing out of the thing granted,

something which did not exist as an independent right before the grant. . . . A reservation is never of a part of the estate itself, but is something taken back out of that already granted, as rent, or the right to cut timber, or to do something in relation to the estate, while an exception is of some part of the estate not granted at all. [Citing cases.] A reservation is always in favor of the grantor, and, if it does not contain words of inheritance, it exists only for the life of the grantor." *Stone v. Stone,* 141 Iowa 438, 119 N. W. 712, 20 L. R. A. (N. S.) 221.

See, also, *Negaunee Iron Co. v. Iron Cliffs Co.,* 134 Mich. 264, 96 N. W. 468; *Dawson v. Western Maryland R. Co.,* 107 Md. 70, 68 Atl. 301, 126 Am. St. 337, 14 L. R. A. (N. S.) 809.

Where the common law method of conveyancing prevails, and a deed which runs to a named grantee only, and not also to his heirs and assigns, conveys only a life estate, this rule is thoroughly well settled and perfectly logical. But what of a state like this, where conveyance to a named grantee without words of inheritance carries a fee simple title? Rem. Comp. Stat., §§ 10552, 10553 and 10554 [P. C. §§ 1924, 1925, 1926], covering, respectively, warranty deeds, bargain and sale deeds and quit-claim deeds, effectually dispense with words of inheritance. We have always upheld statutory deeds, and it would seem that, when words of inheritance are no longer needed in any deed, they should not be required to effect a full and valid title to the new right taken back by a reservation in a lease.

We conclude that the reservation of the right to mine coal is in full force and effect, notwithstanding the death of the lessor.

[4] (2) The remaining contentions can be disposed of under the caption, Is the contract void for

uncertainty, or does it violate the rule against per-
petuities?

It is argued that the life of the leasehold interest is,
in effect, unlimited, because it permits a cessation of
mining when the market for coal does not justify
operating for periods not exceeding two years at any
one time, and that one so disposed might operate for
a day only once in two years and thus extend the life
of the lease indefinitely. Reading the whole of the
provisions affecting that subject would seem sufficient
to refute the argument. They clearly provide for con-
tinuous operations until the coal is exhausted, except
only that, when the market will not permit of a fair
profit, the operations may temporarily cease for a
limited period; but when the limit is reached, they
must be resumed without reference to the market or
the profit. We are not called upon to anticipate that
the respondents will in bad faith try to take advantage
of this clause; but should there be evidence to that
effect at any time in the future, the courts of equity
will always stand ready to grant relief. Inefficiency or
slothfulness in operating would warrant the same re-
sults.

But, even so, appellant contends that the uncertainty
as to the length of time it may continue and as to the
time when it will terminate justify a holding that the
lease is void.

"In general terms a mining lease may be defined to
be a contract for the possession and profits of certain
mining claims or mining property, or portions of
mines, for a fixed period of time, or while a certain
quantity of its product may be obtained, in considera-
tion of a stipulated compensation in kind or in money;
or as a conveyance of a specified interest or portion of
a mine for life or for a fixed period of years, or at
will, in consideration of rent or other recompense."
40 C. J. 990.

"To create an estate for years, the lease must be

certain or capable of being made certain as to the beginning, duration, and termination of the term. Such certainty, however, may be afforded by a reference to collateral or extrinsic circumstances, such as the happening of some collateral event capable in itself of certainty at the time of the execution of the lease." 35 C. J. 971.

"It is generally held to be essential to the validity of a lease that it prescribe with reasonable certainty the date of commencement and the duration of term of the lease, but this rule does not prevent the creation of tenancies in which the term is not absolutely fixed. There is a sufficient designation of the beginning and length of the term where these facts may be gathered from the instrument as a whole. . . . And it has been held that the duration of a term, if not definitely expressed, may be fixed by reference to collateral or extrinsic circumstances." 35 C. J. 1150.

"The general rule is that, if the time of performance of the contract is one which is bound to happen at some time in the future, such contract is certain, even though the time cannot be fixed in advance. Page on Contracts, vol. 1, § 28. Hence it has been decided that a contract to marry after the death of the divorced wife of one of the parties is reasonably definite and certain with respect to the time of performance, since it is made to depend upon an event which, in the course of nature, must inevitably occur, notwithstanding the fact that it is possible that one of the contracting parties may die before that event takes place." *Beeson v. LaVasque,* 144 Ark. 522, 223 S. W. 355.

Our own case of *Faucett v. Northern Clay Co.,* 84 Wash. 382, 146 Pac. 857, is not without application. This court said:

"But in the case at bar, we think there is a certainty of which the trial judge failed to take notice. It is the province of courts to construe contracts, not to make them, and if, by any reasonable interpretation, a contract as written can be sustained, it will not be avoided upon the ground of uncertainty if that which is uncertain can be made certain without doing violence to the general intent and spirit and purpose of the con-

tract when considered as an entire thing. Accordingly it is held that a lease of doubtful duration is construed most favorably to the tenant. . . .

"If a term is doubtful or cannot be implied, its duration may be ascertained by a consideration of all the circumstances, or may be defined by extrinsic reference."

The principle approved in the *Faucett* case is decisive of this question; and, following our prior pronouncement, we must hold that the lease in question is a valid one, because a deposit of coal is something which, if mined, must in its nature certainly be exhausted, and there is nothing in the record to indicate that it will not be so exhausted long before the rule against perpetuities would take effect.

In general, the trial court was right in holding that the lease did not terminate with the death of the lessor, for the reasons already given and because, though the reservation of a right to sell ended with the life of the lessor because the contract so provides, yet his death had no other effect upon the lease. The option to purchase, by its terms, may be exercised at any time during the life of the lease; and the lease being still alive, the option is still in effect. But the trial court, because it was not called to its attention (as it was not even suggested here, either in the briefs or arguments), overlooked our statute on conveyancing, and fell into error in denying to the appellant the right to mine coal in the manner and under the terms fixed by the lease. In that respect, the judgment must be modified, and the case is remanded, with directions to modify the judgment as herein indicated.

The appellant having obtained that which on the face of the record appears to be a substantial result, will recover her costs in this court.

MACKINTOSH, C. J., HOLCOMB, PARKER, and FRENCH, JJ., concur.