[No. 16771–5–I.  Division One.  May 20, 1987.]

MANFRED J. SHOWER, ET AL, *Plaintiffs*, v. WILLIAM M. FISCHER, ET AL, *Appellants*, B–HAVEN, INC., *Respondent.*

*Carla J. Higginson,* for appellants.

*John O. Linde* and *Linde, Boyer & Mashita, P.S.,* for respondent.

COLEMAN, J.—William M. and Mary K. Fischer appeal a summary judgment order granting B–Haven, Inc., the right to purchase the Fischers' San Juan County property at 10 percent less than the appraised value and denying the Fischers' motion for summary judgment to dismiss the B–Haven claim. We reverse and remand.

William and Mary Fischer owned and operated a commercial resort on Orcas Island in San Juan County, Washington. On June 18, 1971, the Fischers sold a portion of the

resort to Robert and Helen Murray, retaining approximately 35 acres and two of the waterfront cabins that formerly constituted the resort. Paragraph 14 of the Fischer/Murray contract contained the following provision:

> Purchaser shall have first offer of refusal to purchase existing uplands of approximately 30 acres, more or less, at an appraised price at time of offer, less 10% of the appraised price, at terms and conditions mutually agreed upon. The same offer and terms shall be available to purchaser for the remaining Waterfront property of approximately 190 feet; Together with 2nd Class Tide Lands.

On June 30, 1976, the Murrays conveyed the same real estate to B–Haven, Inc. The Murray/B–Haven contract contained the following provision:

> As part of the consideration hereof, the sellers covenant and agree to assign to the purchasers that certain first right of refusal more particularly described in paragraph (14) of Real Estate Contract from William M. Fischer and Mary K. Fischer, his wife, to the sellers herein recorded in San Juan County under Auditor's File No. 76217.

On February 22, 1982, the Fischers sold 2 acres of the property they still owned by real estate contract to Manfred J. and Anita Shower. The Showers attempted to sell the property by placing an ad in the local newspaper. As a result of that ad, B–Haven sent the Showers a letter informing them that it had a right of first refusal, placing a cloud on the Showers' title. On June 3, 1983, Fischer wrote the Showers and informed them that he had forgotten about the right of first refusal and was obtaining a release from B–Haven.

> They also have a First Right of Refusal. This was a slip on my part in the hurry to finalize the transaction before we rushed off for Santa Fe. . . . I completely forgot it as relating to the 2 acres, I was only thinking in terms of the total 30 acres. We are getting a Release from John White on the First Right of Refusal for the 2 acres, and will have it recorded. Our Attorney sees no problem here.

On September 29, 1983, the Showers commenced an action for rescission or, in the alternative, declaratory judgment quieting title to the property in them. The action named the Fischers, B–Haven, and the Murrays as defendants. The Fischers cross–claimed against B–Haven alleging that the right of first refusal was personal to the Murrays; therefore, the alleged assignment of the right was invalid. On October 29, 1984, a stipulation and order dismissing the Shower claim was entered. The Shower/Fischer contract was rescinded by this agreement; the Shower claim against the Fischers and the Fischers' cross claim against the Showers were dismissed.

On February 13, 1985, the Fischers moved for summary judgment dismissing the claims of the Murrays and B–Haven. B–Haven also moved for summary judgment confirming its right to exercise an alleged option to purchase that it claimed had been assigned by the Murrays in the Murray/B–Haven contract. On March 21, 1985, the court issued an opinion letter in which it granted B–Haven's motion for summary judgment, awarded attorney's fees and costs, and denied the Fischers' motion for summary judgment. On April 1, 1985, the Fischers filed a motion for reconsideration. On June 10, 1985, the court issued an order on reconsideration that denied the Fischers' motion for reconsideration, granted B–Haven summary judgment, and reduced the amount of attorney's fees for which the Fischers were liable to B–Haven and the Murrays. The court's order held that the transferred right was an option to purchase the existing property owned by the Fischers. The Fischers appealed. The resolution of this appeal turns on whether the Fischer/Murray and Murray/B–Haven contracts created a right of first refusal or an option to purchase.

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR

56(c). This court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Appellants contend that the nature of the right involved in this case is a genuine issue of material fact. They rely on the Fischer/Murray contract and Fischer's deposition in which he stated that the disputed right was a right of first refusal. Respondent appears confused as to the nature of the right. In its answer and its motion for summary judgment, the relief sought by respondent was enforcement of an option to purchase. In its appellate brief, however, respondent terms the right a right of first refusal. The trial court also was not clear in defining the right since it used the terms "right of first refusal" and "option to purchase" interchangeably. In the order granting summary judgment, the court listed as a finding that the right was a right of first refusal but ordered that B–Haven could exercise an option to purchase the entire 35 acres of the Fischers' San Juan County property.

7. The right of first refusal created by the Fischer–Murray real estate contract and as signed to B–Haven, Inc. was neither personal to Murray or void or non-transferable by Murray to B–Haven.

. . .

It is further ordered, adjudged and decreed that defendant B–Haven, Inc.'s motion for summary judgment establishing the enforceability of the option to purchase as contained in the Fischer to Murray real estate contract at paragraph 14 in instrument recorded under Auditor's File No. 76217, records of San Juan County, Washington, is granted. Said right of purchase may be exercised by defendant B–Haven, Inc., their heirs, successors and assigns at its discretion upon payment of the appraised value less 10% upon terms to be agreed upon between the parties. Defendant B–Haven, Inc. is awarded its costs in the amount of $58.67 and a reasonable attorney's fee in the amount of $2,921.00.

The order on reconsideration filed June 10, 1985 also stated that B–Haven could exercise an option to purchase.

3. The Findings of Fact set forth in the prior Orders are also confirmed. Finding of Fact No. 9 which specifically construes paragraph 14 of the Fischer/Murray real estate contract is specifically found to be an option to purchase the existing uplands of approximately 30 acres and/or the remaining waterfront property, which is exercisable by Defendant B–Haven, Inc., its heirs, successors and assigns in interest in and to the property heretofore purchased from Murray;

Whether the Fischer/Murray contract created a right of first refusal or an option to purchase is crucial because the alternative characterization of the right dictates different results. If the right was a right of first refusal, (1) B–Haven's claim was extinguished when the Shower contract was rescinded, and (2) B–Haven could only exercise the right when the Fischers offer to sell the property in the future. *Robroy Land Co. v. Prather,* 95 Wn.2d 66, 71–72, 622 P.2d 367 (1980). If, on the other hand, the contract created an option to purchase, B–Haven could force a sale of all of the property at any time. *Beets v. Tyler,* 365 Mo. 895, 290 S.W.2d 76, 81 (1956).

■■ The distinction between the right of first refusal and an option to purchase was discussed in *Beets.* There the deeds to lots in a development included a restrictive covenant that no sale of a lot could be consummated without giving the grantor and the adjoining property owners 15 days' written notice of the terms of the sale and allowing them the right to buy the property on the same terms. *Beets,* at 899. The Missouri Supreme Court, citing the *American Law of Property,* held that such an "option to purchase" was really a preemptive right that did not give the grantor and adjacent property owners the power to force a sale.

Preliminary to a consideration of these contentions it should be stated that the right to purchase provided for in the foregoing covenant may not accurately be referred to as an option. It is a right of pre–emption. As stated in American Law of Property, Vol. VI, Section 26.64, p. 507: "A pre–emption differs materially from an option. An

option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the preemptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone."

*Beets,* at 901–02. The Washington court recognized this distinction when it noted that a right of first refusal does not give the holder the power to force a sale.

The holder of a right of first refusal has far less of an interest in land than the holder of an ordinary option. The preemptioner has no power or right to affect the property in any way until its owner expresses a desire and willingness to sell. At that point the preemptioner has, for the contracted duration, an election (in the instant case, 60 days).

If the preemptive holder elects to purchase the property, a new contract ensues which may give him an interest in land. An election not to purchase, however, does not release a property interest. It is but the exercise of the contract right of first refusal. *See generally* Berg, *Long–Term Options and the Rule Against Perpetuities,* 37 Cal. L. Rev. 1, 235, 419 (1949).

*Robroy,* at 71–72.

To determine the nature of the right in dispute here, we must look to the language of the contract. The interpretation of a written contract is a question of law. *Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 992, 472 P.2d 611 (1970). The determination of whether a written contract is ambiguous is also a question of law. *Murray,* at 992–93. If a written contract, however, is ambiguous and there is extrinsic evidence as to the intentions or obligations of the respective parties, an issue of fact may be created. *Murray,* at 992. In the instant case, the contract terms for the right in dispute are "first offer of refusal to purchase." One cannot refuse to purchase unless one is given an offer of sale.

This language unambiguously creates a right of first refusal, not an option to purchase. The right becomes operative when the grantor decides to sell the property. Therefore, the trial court erred when it granted summary judgment to B–Haven allowing it to exercise an option to purchase all 35 acres of the Fischer property. If the right is transferable, B–Haven's claim was extinguished with rescission of the Shower contract, and the right cannot be exercised until the Fischers offer the property for sale.

We next consider whether the right of first refusal granted in the Fischer/Murray contract was transferable.

Appellants contend that whether the right granted to the Murrays by the Fischer contract was transferable is a genuine issue of material fact. Appellants rely on Fischer's deposition in which he stated that the right was created only for the Murrays out of a long–standing friendship. In reply, respondent argues that the disputed language in the Fischer/Murray contract constitutes a covenant that runs with the land. Respondent contends that the Fischer/Murray covenant touches and concerns the land because it affects the quality, use, value, and enjoyment of the land; therefore, it is a covenant that runs with the land and is assignable. Respondent offers no authority, however, for its contention that either an option to purchase or a right of first refusal is a covenant that runs with the land. Moreover, running covenants must not only touch and concern the land, but the covenanting parties must also intend that the covenant bind successors. Stoebuck, *Running Covenants: An Analytical Primer,* 52 Wash. L. Rev. 861, 874–76, 895–97 (1977); *Leighton v. Leonard,* 22 Wn. App. 136, 138–40, 589 P.2d 279 (1978). Thus, to be characterized as a running covenant, the parties must have intended that the covenant bind successors. As will be discussed, the intent of the parties is a genuine issue of material fact in this case.

The *American Law of Property* states that absent evidence of intent, options or preemptions are generally construed to be nontransferable.

There is a strong tendency to construe an option or pre–emption to be limited to the lives of the parties, unless there is clear evidence of a contrary intent. See Lantis v. Cook, [342 Mich. 347, 69 N.W.2d 849 (1955),] [Kershner] v. Hurlburt, [277 S.W.2d 619 (Mo. 1955),] and Roemhild v. Jones, [239 F.2d 492 (8th Cir. 1957)].

6 *American Law of Property* § 26.67, at 984 (Supp. 1977). Other jurisdictions have held in accordance with this rule. In *Kershner v. Hurlburt,* 277 S.W.2d 619, 623 (Mo. 1955), the court held that the contract between adjoining property owners which provided that if either desires to sell a portion of his land, he must first offer it to the other at a set price, was a personal right that was not transferable since there was no provision nor any evidence of intent that the contract be binding on their heirs. In *Waterstradt v. Snyder,* 37 Mich. App. 400, 194 N.W.2d 389, 390 (1971), the court held that since there was no evidence of intent to bind successors, the option to purchase at a set price if the grantee ever desires to sell was a personal right that was not transferable. *See also Mercer v. Lemmens,* 230 Cal. App. 2d 167, 40 Cal. Rptr. 803, 805–06 (1964); *Old Mission Peninsula Sch. Dist. v. French,* 362 Mich. 546, 107 N.W.2d 758, 760 (1961); *Dodd v. Rotterman,* 330 Ill. 362, 161 N.E. 756, 759–60 (1928); *Maynard v. Polhemus,* 74 Cal. 141, 15 P. 451, 452 (1887); *In re Estate of Sifferman,* 603 S.W.2d 30, 32 (Mo. Ct. App. 1980). The Fischer/Murray contract did not contain a provision that the preemptive right was assignable; however, Fischer's June 3, 1983 letter to the Showers indicating that he had forgotten that B–Haven had a right of first refusal is sufficient to raise a fact question as to his intent in the original grant to the Murrays. In light of our holding that the contract created a right of first refusal, a trial is necessary to resolve the transferability issue.

The Fischers have requested attorney's fees on appeal. They contend that because the B–Haven/Murray contract had the same attorney's fees clause as the Fischer/Murray contract, the Fischers are entitled to attorney's fees

from B–Haven. In *Dauphin v. Smith,* 42 Wn. App. 491, 713 P.2d 116 (1986), this court held that where there was no privity of contract between the parties, the attorney's fees provision of a contract to which one of the parties was in privity could not be enforced against the other party.

> The rule in Washington is that "[i]n absence of contract, statute, or recognized ground of equity, a court has no power to award an attorney's fee as part of the costs of litigation." *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 113–14, 111 P.2d 612 (1941). Here, there were two separate contracts of sale: Dauphin to Smith and Smith to DPPMB. Thus, there was no privity of contract between Dauphin and DPPMB that would permit Dauphin to enforce against DPPMB the attorney's fees provision of his contract. No statute provides for attorney's fees in these circumstances. We must, therefore, look to some recognized ground of equity for such an allowance.

*Dauphin,* at 494. As in *Dauphin,* there were two separate contracts of sale. Appellants were not in privity with respondent. Thus, appellants offer no basis on which this court can grant attorney's fees.

Reversed and remanded for further proceedings consistent with this opinion.

RINGOLD, A.C.J., and WILLIAMS, J., concur.