IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HARTFORD, LLC, a Washington State Limited Liability Company, and TENELCO INC., a Washington Corporation, | No. 84293-5-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| TANDEM SERVICE CORPORATION, a Washington Corporation, and DAVID ELDREDGE, | |
| Respondents. | |

BOWMAN, J. — Hartford LLC and Tenelco Inc. appeal the trial court's order dismissing their petition to quiet title to real property. Hartford and Tenelco claim that a right of first refusal to purchase the property violates the rule against perpetuities. They also challenge the trial court's award of attorney fees. We affirm the order dismissing the lawsuit but reverse the award of attorney fees and vacate that judgment.

FACTS

In 1974, Les Eldredge established Tandem Service Corporation, a business providing septic tank services. In 1990, Les[1] bought a 22-acre parcel of land on Hartford Drive in Lake Stevens (Property) "because it met all the numerous requirements for operating Tandem's septage business." Les then

_____

[1] We refer to members of the Eldredge family by their first names for clarity.

leased the Property to Tandem. In 1994, Les' son, David Eldredge, assumed the role of president of Tandem and began taking over operations. In 1998, Les married Catherine Tenold-Eldredge. In 2000, David became an owner of Tandem. And in 2004, Les formed Eldredge Industrial LLC (EI).

In 2008, Les received a criminal conviction and the trial court sentenced him to more than 10 years in prison. As a result, he appointed David to serve as his attorney-in-fact. On June 30, Les renewed the commercial lease for the Property with Tandem (2008 Lease).[2] The lease provided for a 10-year term with an option to renew for another 10 years.

In December 2008, a victim of Les' crime sued Les, Catherine, and their corporations EI, Tandem, and Tenelco Inc.[3] for damages. In July 2010, the parties settled the civil suit (Settlement). The defendants agreed to pay $1.6 million in damages. To meet the obligations of the Settlement, Les and Catherine entered into a separate agreement between themselves (2010 Agreement).[4] Catherine agreed to pay $500,000 toward the Settlement. In consideration of the payment, Les agreed to transfer ownership of the Property to Catherine. The parties conditioned the transfer on Catherine leasing the Property to Tandem for five years with three more five-year renewal options.

---

[2] David signed the lease on behalf of Les. In their response brief, David and Tandem state that Les transferred the lease with Tandem to EI, but no document in the record supports their claim.

[3] Tenelco is a business wholly owned by Catherine. Tenelco leases the Property as a cotenant with Tandem.

[4] EI was also a party to the 2010 Agreement.

And they agreed to execute a "purchase option held by David Eldredge, individually." Catherine formed Hartford LLC as an entity to hold the Property.

Effective August 1, 2010, Les and Catherine executed an "Assignment, Assumption and Amendment of Lease" (2010 Assignment) to carry out the 2010 Agreement.[5] Les assigned his interest in the 2008 Lease with Tandem[6] to Catherine. And Catherine assumed "all duties, obligations, covenants and conditions" of the lease. The 2010 Assignment also amended the 2008 Lease to provide a new term of five years with three additional five-year renewal options. And it created a right of first refusal for David that converts to an option to purchase in 2030. That right "survive[s] indefinitely, including after the termination of the Leases." The parties agreed that if David exercised the right of first refusal, the purchase price would be set at "fair market value."

In 2016, Catherine wanted to sell the northern portion of the Property. So, the parties executed a "Second Amendment of the [2008] Lease" (2016 Amendment). They agreed that David's "right of first refusal shall not automatically apply" if Catherine sells the northern portion of the Property. And if the Property is sold, David's right of first refusal terminates as to the northern portion. But David's right of first refusal as to the southern 12 acres of the Property remained unchanged.

_____

[5] The 2010 Assignment named EI collectively with Les as assignor and Hartford as assignee.

[6] The 2010 Assignment also "formally recognize[d]" Tenelco as a cotenant.

3

On July 1, 2018, Hartford and Tandem executed a new lease (2018 Lease).[7]  The terms were identical to the 2008 Lease except that it provided for a five-year term and only two options to renew for additional five-year terms.

On August 21, 2019, Hartford and Tenelco (collectively Hartford) sued Tandem and David (collectively Tandem), seeking declaratory relief and a judgment quieting title to the Property in its favor.  Hartford alleged that David has no right of first refusal because (1) the 2010 Agreement is not supported by consideration, (2) the right of first refusal is an unlawful perpetual property interest, and (3) the right is an unfair or unjust impairment of marketability contrary to public policy.

After Hartford sued, Les petitioned for divorce.  The court stayed Hartford's lawsuit pending the adjudication of Les and Catherine's dissolution so that the parties could resolve their interests in the Property.  The court entered a final dissolution decree on August 27, 2021, awarding Catherine all interest in the Property.

In October 2021, Hartford moved for partial summary judgment, arguing that David's right of first refusal "purports to survive indefinitely," violating the rule against perpetuities.  The court denied the motion and the case proceeded to trial.

At the bench trial, Hartford called no witnesses and voluntarily dismissed all of its claims except one—that the right of first refusal violates the rule against

---

[7] We note that the first paragraph of the 2018 Lease identifies Les as the lessor. But Catherine signed the lease on behalf of Hartford as the lessor, and the trial court found that the 2018 Lease was between Hartford and Tandem.  Because the parties do not challenge the finding, we treat the 2018 Lease as if Hartford is the lessor.

perpetuities.  Hartford argued that the plain language of the 2010 Assignment created "a perpetual option to compel the owner to sell real estate," which "violates the rule against perpetuities."  In response, Tandem sought to offer David and Les' testimony about the intent of the parties when executing the right of first refusal.  Hartford objected, arguing that the court could not consider extrinsic evidence to interpret the contract.  The court ruled that "[s]ince this is a bench trial, I will allow the testimony, but I honestly don't think it's relevant."

At the close of trial, the court issued findings of fact and conclusions of law.[8]  The court found that the "Right of First Refusal and Option [to Purchase real property] granted to David Eldredge are personal rights to him," that they "are not transferable, assignable, or devisable," and that the rights "will vest, or not, by the end of David Eldredge's lifetime."  The court concluded that the term "survive indefinitely" in the 2010 Assignment must be read in context with the 2008 Lease, 2010 Assignment, and 2016 Amendment.  It found those agreements show that the right of first refusal was personal to only David and no evidence "indicate[s] that David . . . is allowed to transfer" his rights.  As a result, the court concluded that David's lifetime is a proper measure for applying the rule against perpetuities and that his right of first refusal does not violate the rule.

Hartford appeals.

---

[8] None of the trial court's findings relied on Les or David's testimony.

ANALYSIS

Hartford argues the trial court erred by concluding David's right of first refusal complies with the rule against perpetuities.[9]  We disagree.

After a bench trial, we review the court's factual findings for substantial evidence.  Cantu v. Dep't of Labor & Indus., 168 Wn. App. 14, 21, 277 P.3d 685 (2012).  Substantial evidence means evidence that "is sufficient to persuade a rational, fair-minded person that the finding is true."  Id.  We review legal conclusions de novo.  Id.[10]

The purpose of the rule against perpetuities "is to prevent the fettering of the marketability of property over long periods of time by indirect restraints upon its alienation."  Wash. State Grange v. Brandt, 136 Wn. App. 138, 147, 148 P.3d 1069 (2006).  The rule is not a rule of construction.  Id.  Instead, it is a positive

---

[9] We note that case law is unclear the extent to which the rule against perpetuities generally applies to a right of first refusal.  See Robroy Land Co. v. Prather, 95 Wn.2d 66, 71, 622 P.2d 367 (1980) (a potential buyer's right of first refusal to purchase real property is only a contractual right that does not create an interest in land subject to the rule against perpetuities); but see Manufactured Hous. Cmtys. of Wash. v. State, 142 Wn.2d 347, 366-68, 13 P.3d 183 (2000) (a law giving mobile home park tenants the right of first refusal over a sale of their park was a property interest that amounted to an unconstitutional taking), abrogated on other grounds by Chong Yim v. City of Seattle, 194 Wn.2d 651, 451 P.3d 675 (2019); Lake of the Woods Ass'n v. McHugh, 238 Va. 1, 6, 380 S.E.2d 872 (1989) (" '[a]s rights of first refusal are interests in property, the great majority of American jurisdictions have applied the Rule Against Perpetuities to such rights' ") (quoting Ferrero Constr. Co. v. Dennis Rourke Corp., 311 Md. 560, 565-66, 536 A.2d 1137 (1988) (citing over 20 jurisdictions that apply the rule against perpetuities to rights of first refusal)).  Because the parties do not raise the issue, we do not address it here.

[10] Hartford challenges several of the trial court's findings of fact and conclusions of law.  The challenged findings amount to legal conclusions, so we treat them as such.  Fine v. Laband, 35 Wn. App. 368, 374, 667 P.2d 101 (1983).  All the challenged conclusions relate to whether the trial court properly interpreted the 2010 Assignment and applied the rule against perpetuities.

mandate of law to be applied no matter the intent of the grantor. Id. at 147-48

(citing Betchard v. Iverson, 35 Wn.2d 344, 348-49, 212 P.2d 783 (1949)). But

> to determine whether a conveyed interest violates the rule, a court first must construe the language of the conveyance in precisely the same manner as if there were no rule against perpetuities, and then "apply the rule rigorously, in complete disregard of the wishes or intention of the [grantor]."

Id. at 148[11] (quoting Betchard, 35 Wn.2d at 349). So, we must first construe the

language of the contract at issue, then strictly apply the rule against perpetuities.

Id.

We interpret the language of contracts de novo. Kim v. Moffett, 156 Wn.

App. 689, 697, 234 P.3d 279 (2010). When interpreting a contract, we attempt

"to determine the parties' intent by focusing on the objective manifestations of the

agreement, rather than on the unexpressed subjective intent of the parties."

Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262

(2005). We give words "their ordinary, usual, and popular meaning unless the

entirety of the agreement clearly demonstrates a contrary intent." Id. at 504.

And we interpret contracts as a whole, seeking to give meaning to each provision

and harmonize terms that appear to conflict. Nishikawa v. U.S. Eagle High, LLC,

138 Wn. App. 841, 849, 158 P.3d 1265 (2007). To determine the parties' intent,

we interpret only what the parties wrote in the agreement, not what they intended

to write. Hearst Commc'ns, 154 Wn.2d at 504. But we may look to the

circumstances surrounding the making of the contract and the parties'

---

[11] Alteration in original.

subsequent conduct. <u>Pelly v. Panasyuk</u>, 2 Wn. App. 2d 848, 865-66, 413 P.3d 619 (2018).

In general, contract rights are assignable unless assignment contravenes public policy or is prohibited by statute or stipulation. <u>Carlile v. Harbour Homes, Inc.</u>, 147 Wn. App. 193, 207, 194 P.3d 280 (2008). The transferability or assignability of a right of first refusal depends on the parties' intent. <u>Shower v. Fischer</u>, 47 Wn. App. 720, 727-28, 737 P.2d 291 (1987). But, without evidence of contrary intent, options to purchase or rights of first refusal are generally construed to be nontransferable. <u>Id.</u> at 727. And there is a " 'strong tendency' " to construe a right of first refusal as limited to the lives of the parties. <u>Id.</u> at 728 (quoting 6 AMERICAN LAW OF PROPERTY § 26.67, at 984 (Supp. 1977)).

Here, Hartford granted David a right of first refusal to purchase the Property in the 2010 Assignment.[12] It reads:

> In consideration of the terms in this Assignment and the [Settlement], Assignee [Hartford], as Lessor (the "Seller") grants to David Eldredge (the "Purchaser") the right of first refusal to purchase the Real Property, prior to the sale, assignment, gift, or other transfer or bequest (collectively the "transfer") under the terms and conditions hereinafter set forth.
>
> . . . . Unless otherwise exercised, terminated or waived by Purchaser, this Right of First Refusal shall survive indefinitely, including after the termination of the Leases. In addition, if not otherwise exercised or waived, after August 1, 2030 Purchaser may at his election unilaterally exercise this Right of First Refusal without receiving notice from Seller of a contemplated transfer. Put more simply, this Right of First Refusal shall automatically convert into an Option to Purchase after August 1, 2030 which Purchaser may unilaterally exercise by delivering written notice to Seller.

---

[12] In the 2016 Amendment, the parties modified the right of first refusal to apply to only the southern 12 acres of the Property.

Hartford argues that the contract creates a perpetual right of first refusal because it says the right "shall survive indefinitely." But such an interpretation ignores the language of the contract as a whole. The plain language of the 2010 Assignment grants the right of first refusal to one person—David. This suggests the parties intended to create a right enforceable by only David. The 2010 Agreement also expressed such an intent. In that contract, Les and Catherine agreed that the right of first refusal will be held "by David Eldredge, individually." And neither the 2010 Assignment nor the 2010 Agreement include express language allowing David to transfer or assign his interest. As a result, David's interest terminates with his life and does not violate the rule against perpetuities.

Hartford claims that even without clear language about transferability, the right of first refusal necessarily survives David. Citing Estate of Niehenke v. Guske, 117 Wn.2d 631, 818 P.2d 1324 (1991), it contends that "an unexercised and unexpired option is subject to devise and succession." But Hartford misconstrues Niehenke. There, a testator left his nephew an option to purchase farmland in a will. Niehenke, 117 Wn.2d at 633-34. The will also designated several alternate optionees. Id. at 634. The will required the nephew to exercise his option to purchase within three months after the testator's death. Id. But the nephew died before the testator. Id. And when the testator died, both the nephew's heirs and the alternate optionees laid claim to the nephew's option to purchase the farmland. Id. at 634-35. Our Supreme Court held that "a gift by will of an option to purchase estate property, which is a valuable right, should also be

9

susceptible to the operation of the anti-lapse statute[13] unless the testator clearly indicates a contrary intent." Id. at 639. As a result, the option to purchase passed to the nephew's heirs in the same manner it would have passed to the nephew. Id.

Niehenke is inapt. Unlike the nephew in Niehenke, David's right of first refusal arises from a contract, not a will. And the right has already vested in David, so the anti-lapse statute does not apply.[14]

The trial court did not err by concluding that David's right of first refusal satisfies the rule against perpetuities.

Attorney Fees

Hartford argues that the trial court erred by awarding Tandem attorney fees under a provision of the 2008 Lease. We review the trial court's award of attorney fees for manifest abuse of discretion. Steele v. Lundgren, 96 Wn. App. 773, 780, 982 P.2d 619 (1999).

The prevailing party to an action enforcing a contract that provides for attorney fees and costs is entitled to an award of fees. RCW 4.84.330. Here, the

---

[13] The anti-lapse statute, former RCW 11.12.110 (1965), provides:

When any estate shall be devised or bequeathed to any child, grandchild, or other relative of the testator, and such devisee or legatee shall die before the testator, having lineal descendants who survive the testator, such descendants shall take the estate, real and personal, as such devisee or legatee would have done in the case he had survived the testator.

[14] In its reply brief, Hartford argues for the first time that Hoover v. Ford's Prairie Coal Co., 145 Wash. 295, 303, 259 P. 1079 (1927), also holds that a right of first refusal is presumptively transferable. But that case involved a lease with an option to purchase after the lessor's death. Id. at 301-02. And the court recognized that " '[w]here a reservation does not contain words of inheritance, it exists only for the life of the grantor.' " Id. at 302 (quoting 18 C.J. Deeds § 340, at 343 (1919)).

2010 Assignment creating the right of first refusal has no attorney fee provision.

But section 24 of the 2008 Lease provides:

> COSTS AND ATTORNEY'S FEES      If, following a default, by Lessee [Tandem], Lessor [Les] refers this Lease to an attorney for enforcement, Lessee shall reimburse Lessor for Lessor's reasonable attorney's fees incurred, regardless whether a lawsuit is commenced. . . . If, by reason of any default or breach on the part of either party in the performance of any of the provisions of this lease, a legal action is instituted, the losing party agrees to pay all reasonable costs and attorney's fees of the other party. . . . Also, if by reason of any default on the part of Lessee it becomes necessary for the Lessor to employ an attorney, Lessee shall pay to Lessor a reasonable attorney's fee.

The trial court found that "Petitioner[s'] action to declare unenforceable the Right of First Refusal and Option implicate the [2008] Lease, making Section 24 of the Lease applicable."  But it does not appear that the 2008 Lease incorporates the right of first refusal.[15]  And the portion of the 2010 Assignment granting David the right of first refusal does not implicate the 2008 Lease. Indeed, the plain language of the 2010 Assignment says that the right of first refusal "shall survive . . . the termination of the Leases."  In any event, even if the attorney fee provision of the 2008 Lease did apply, Hartford's lawsuit does not amount to a "default or breach" under the lease terms.  So, the action does not trigger the attorney fee provision.  The trial court erred by awarding Tandem attorney fees.[16]

---

[15] Neither is the right of first refusal incorporated in the 2018 Lease, which was in effect at the time Hartford filed its 2019 lawsuit.

[16] Hartford and Tandem also request attorney fees on appeal.  "A contract provision that authorizes attorney fees below authorizes attorney fees on appeal." Nw. Cascade, Inc. v. Unique Constr., Inc., 187 Wn. App. 685, 705, 351 P.3d 172 (2015). Because no contract authorizes attorney fees below, we decline to award fees to either party on appeal.

We affirm the trial court's order dismissing Hartford's claims but reverse the court's award of attorney fees to Tandem and vacate that judgment.

_____
Brennan, J

WE CONCUR:

_____
Hazelrigg, ACJ

_____
Smith, C.J.