CHADWICK H. BEETS and ELEANOR BEETS, Appellants, v. AMIE LOUISE TYLER, Respondent, No. 44890—290 S. W. (2d) 76.

Division One, April 9, 1956.

Motion for Rehearing or to Transfer to Banc Overruled, May 14, 1956.

896

*Rufus Burrus* for appellants.

*Warren S. Earhart* for respondent.

898

*Hall, Bresler & Cohn* and *Harry A. Hall* amicus curiae.

[79] HOLMAN, C.—In this action to try and determine the respective rights of plaintiffs and defendant in regard to certain real estate the plaintiffs sought a decree to the effect that they were entitled to purchase the said real estate, in accordance with an option privilege hereinafter more fully described, and a decree of specific performance to effectuate said right. Plaintiffs also prayed that they be awarded as damages "the reasonable, monthly rental value of said premises, from this date until the possession thereof is delivered to them." Plaintiffs appeal from the order and judgment of the court dismissing their amended petition upon the motion of defendant which alleged that said petition "does not state a claim or cause of action upon which relief can be granted." Since the petition sought a transfer of the title to certain real estate from defendant to plaintiffs our jurisdiction is obvious. Article V, Section 3, Constitution of Missouri, 1945, V.A.M.S.

Plaintiffs' petition rather fully states the facts upon which they rely. However, to a limited extent, we may state some facts appearing in various exhibits attached to said pleading. Under Section 509.130, RSMo 1949, V.A.M.S., such exhibits are a part of the petition for all purposes and may be considered in passing upon the sufficiency thereof. Corbin v. Hume-Sinclair Coal Mining Co., 361 Mo. 888, 237 S. W. 2d 81.

It appears in the petition that the property involved herein is located in a residential subdivision in Jackson County called "Lake Lotawana." The tract of 1500 acres which was utilized for this subdivision was owned by the Lake Lotawana Development Company. This company, in about 1928 or shortly prior thereto, constructed a dam and created a large lake which covered an area of about 600 acres. In developing the surrounding area for recreational and homesite uses, roads were built and all but three blocks were subdivided, thus providing more than 1800 lots. Many of these lots have been sold and more than 500 dwelling houses have been built thereon.

As a part of the plan of development certain restrictive covenants were included in every conveyance made by the Development Company. The issue to be determined on this appeal involves one of the restrictive provisions contained in said deeds, as follows: "No sale of said lots shall be consummated without giving at least fifteen days' written notice to GRANTOR and the owners of the two lots adjoining said lot on the sides, of the terms thereof; and any of them shall have the right to buy said lot on such terms. Such notice shall be personally served if service can be made on the subdivision; if any person entitled to service cannot be found on the subdivision, notice shall be mailed to such person at his address last known to the GRANTOR. Affidavit of the person making service shall be sufficient evidence thereof to protect a purchaser. State laws govern." It is also provided in the deeds that the covenants and restrictions "shall run with the land and bind all subsequent owners of said lot until and including January 1, 1948," and that "said restrictions may be extended beyond said twenty-year period, for a new period, not exceeding twenty years, by an instrument executed by the then owners of majority of the front feet in said subdivision and duly acknowledged and recorded in the recorder's office of said Jackson County before the expiration of said twenty-year period; and further extensions may be effected in like manner."

It is further alleged that the said restrictions and covenants were extended for an additional period of 20 years from and after January 1, 1948, by an instrument filed for record on October 7, 1947; which was signed by plaintiffs and defendant and others owning in the aggregate, at that time, a majority of the front feet in the whole of said subdivision.

It further appeared that plaintiffs owned all of Lots 22, 23, and 40 except the west 40 feet of Lot 23, all in Block "B". Defendant owned the west 40 feet of Lot 23 and all of Lots 24 and 39 also in Block "B". Lots 22, 23, and 24 were adjoining [80] lots on the south side of Shore Drive and Lots 39 and 40 were located almost directly across the street therefrom. It will therefore be seen that plaintiffs' Lot 40 adjoins the east side of defendant's Lot 39 and that plaintiffs and defendant each own a part of Lot 23 on the south side of the drive so that plaintiffs own the 60 feet east of the division line (Lot 22 and east 10 feet of Lot 23) and defendant owns 90 feet to the west of said line (Lot 24 and west 40 feet of Lot 23). Plaintiffs formerly owned all of Lot 23 and had sold the west 40 feet thereof to defendant.

Plaintiffs further alleged that defendant, on September 21, 1954, entered into a written contract to sell all of her above-described real estate to Marshall and Betty C. Long for the sum of $9,000. The contract provided for the payment of $1,000 upon the signing thereof and that the balance be paid upon delivery of the deed. Other provisions therein were about the same as those usually found in such contracts except the following: "Seller retains an estate in such property consisting of the right to visit such property during the next ten years and to occupy a bedroom alone during her visits to such property. Buyers in addition to the cash consideration above described agree to furnish the seller her meals during such visits and to treat her cordially. The right in seller to so visit the property shall be vested in her alone and cannot be assigned."

It was alleged that on October 7, 1954, plaintiffs received formal notice from defendant of said contract of sale as follows: "You are hereby notified that I have contracted to sell the west 40 feet of Lot 23, all of Lot 24, and all of Lot 39, all in Block B, Lake Lotawana, a subdivision in Jackson County, Missouri, according to the recorded plat thereof, to Marshall Long and Betty C. Long, a copy of such contract being attached hereto and made a part hereof." Immediately thereafter, on said date, plaintiffs gave notice to defendant and to the purchasers that they were exercising the option given them as adjoining lot owners to purchase the said lots on the same terms as contained in said contract and delivered to defendant the sum of $1,000, the down payment provided for in the contract. It is then alleged that defendant has failed and refused to deliver to plaintiffs the abstract of title or to make and deliver a warranty deed conveying the said lands to plaintiffs or to otherwise consummate the said sale, and that plaintiffs are ready, willing and able to pay the balance of the purchase price to defendant upon her compliance with the said agreement.

The contract in question, when considered in connection with the provisions of the foregoing restrictive covenant or option, is unusual in two respects, i.e., (1) there are three lots, or portions thereof, sold as a unit for one total consideration instead of such being separately

stated as to each lot, and (2) defendant reserved a limited personal use of the residence with the purchasers to furnish her certain services of a somewhat personal nature.

Defendant's first point is that the petition does not state a claim because a court of equity will not decree specific performance of a contract to render personal services and hence there is no mutuality of remedy. It is, of course, a well-established general rule that equity will not ordinarily decree specific performance of a contract for personal services. Richardson v. Ozark Airlines, Mo. Sup., 270 S. W. 2d 8. However, we do not deem it necessary to determine whether defendant could obtain a decree of specific performance of plaintiffs' agreement to furnish her room and board upon her visits to her former home. This, for the reason that mutuality of remedy is not always essential to a decree of specific performance. Rice v. Griffith, 349 Mo. 373, 161 S. W. 2d 220. We think it clear that the instant case is one where plaintiffs, as a requirement for the decree sought, need not show that specific performance is obtainable by each of the parties to the contract.

As will hereafter more fully appear, we think the restrictive covenant in question is reasonable and valid. It should be made clear at the outset that many of the arguments advanced by defendant for [81] the nonenforceability of the so-called option arise from the unusual nature of the contract defendant entered into with the Longs. It may be assumed that she understood that the said covenant constituted a restraint upon her right to sell the property to any person of her choosing and that such difficulties might arise as a result of a contract of this nature. In a proper case it might be held that a property owner in this subdivision, by purchasing property subject to these restrictions, has lost the right to enter into a contract as unusual and out of the ordinary as the instant one. Provisions of that nature could be so repugnant to the average adjoining lot owners as to effectively destroy, for all practical purposes, the right to purchase. However, we need not reach that question in this case as plaintiffs allege that they are willing to purchase on the terms agreed to by the Longs. We do say, however, that this contract was of defendant's own making and equity will not permit her to say that plaintiffs may not have specific performance thereof because of difficulties that may arise by reason of the peculiar provisions she saw fit to place therein.

The next point briefed by defendant is that the alleged option to purchase is invalid and unenforceable for six reasons therein stated. We will attempt to discuss each of these contentions as briefly as reasonably possible.

Preliminary to a consideration of these contentions it should be stated that the right to purchase provided for in the foregoing covenant may not accurately be referred to as an option. It is a right.

of pre-emption. As stated in American Law of Property, Vol. VI, Section 26.64, p. 507: "A pre-emption differs materially from an option. An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone."

■ Defendant argues that "the alleged option is an unreasonable restraint on the alienation of such land." As we view this question, the effect of a pre-emptive right to purchase, as a practical restraint on alienation, depends upon the manner of fixing the price. It would appear that a pre-emption for a fixed price, without reference to any future increase in value, might well operate as an unreasonable restraint on alienation. Kershner v. Hurlburt, Mo. Sup., 277 S. W. 2d 619. However, the instant provision in no way restrained defendant from the free alienation of her land. She could negotiate a sales contract at the highest price obtainable. She merely had to offer to the Development Company and adjoining lot owners the prior right to buy upon the terms fixed. This amounts to no more than a right in these interested parties to buy the property at the market price whenever defendant decided to sell. They could not force her to sell and she could not make them buy. Under the provisions of that particular covenant the only way they could prevent her from selling to anyone was for one of them to buy the property upon the same terms. It is our view that the provision in question is no unreasonable restraint on alienation. Restatement, Property, Chap. 30, Section 413(1), p. 2441; American Law of Property, Vol. VI, Section 26.65, pp. 507, 508.

■ In connection with this point defendant also argues that it is obvious that plaintiffs could not possibly perform this contract because it provides that she be entertained in the home by the *Longs* and that entertainment by the plaintiffs would not be the same. We will dispose of this contention by simply saying that defendant knew that plaintiffs would have the right to purchase, and hence substitute for the Longs in furnishing these services, and, therefore, she must have entered into the contract with the idea that she would be [82] willing to accept performance from them. Also, in connection with this point, defendant asserts that the covenant in question is void because repugnant to the grant of a fee simple title. The cases upon which she relies are factually different from the case at bar. What we have already said will indicate our view that this provision is not inconsistent with the vesting of a fee simple title. The granting

clause in the deed and the provision regarding sale are equally clear and can be harmonized.

It is next contended by defendant that the provision under consideration violates the rule against perpetuities. We see no merit in this point. The restriction was limited to a period of 20 years with a manner providing for an extension for a new period, not exceeding 20 years, by an instrument executed by the then owners of a majority of the front feet in the subdivision. Since the original restriction was limited to 20 years, and the new period, requiring a new agreement, could not exceed 20 years, it would seem that the arrangement would not violate the rule against perpetuities. Moreover, a somewhat similar provision has been held not to violate the rule, even though not limited in time, since the pre-emptive right constituted no impediment to the transfer of the property. Weber v. Texas Co., 83 F. 2d 807.

In connection with general allegations in the petition concerning the early development of this subdivision plaintiffs stated that "the development was new and untried in the community and the proprietors thereof were endeavoring to attract owners who would develop the homesites, thereby increasing the values of adjoining properties." Defendant now contends that her contract to sell to the Longs is in harmony with the stated objective but that the purpose of plaintiffs, in seeking to compel a sale to them, is in conflict with the expressed purpose of the deed provision as they obviously cannot use or develop two homesites. She further asserts that it is apparent that plaintiffs seek to buy the property for speculation and that a court of equity should not aid them in accomplishing an objective which is contrary to that which the deed provision was intended to accomplish. We can think of many reasons that may have motivated the Development Company in placing the instant provision in the deeds. There is no requirement that plaintiffs allege any of these reasons in their petition. The quoted allegation was preliminary and historical in nature. If plaintiffs have a right to purchase this property the court will not inquire into their reasons for desiring to do so unless, perchance, it should appear that they seek it for a purpose that is unlawful or against public policy.

Next, defendant contends that the provision for purchase is invalid and unenforceable because its terms are so indefinite and uncertain as to be ambiguous and meaningless. An examination of the provision discloses no uncertainty when applied to the facts in the instant case. But defendant hypothesizes several situations of fact that might possibly occur in another case and which perhaps might present difficult problems for solution. For example, she suggests that all three of the possible purchasers might avail themselves of the right to purchase at the same time, and inquires further as to the effect of the provision on judicial sales and other related problems. It would seem sufficient to observe that none of these questions are presented

by the facts of this case and they may never arise. We limit our decision in this case to the facts now presented and pretermit hypothetical situations until such questions actually arise.

▪ As previously noted defendant sold all of her lots as a unit and for one total consideration. She now asserts that plaintiffs are not entitled to a decree of specific performance because they had no option (pre-emption) to purchase part of the land involved. In this connection her first point is that since plaintiffs' east 10 feet of Lot 23 was not described in the instrument extending the restrictions, their right to purchase the west 40 feet of said [83] lot expired on January 1, 1948. While we need not decide the point it would appear that all property in the subdivision is bound by the extension. It is sufficient for present purposes to say that plaintiffs signed the instrument and obviously intended to include the said 10-foot strip as their land was described as having a frontage of 60 feet which would include Lot 22 and the 10-foot strip of Lot 23.

The contention relating to Lot 24 is more troublesome. Defendant argues that since plaintiffs do not own a *lot* adjoining Lot 24 they do not have a right to purchase said lot. We agree with her contention that ordinarily the court must decree specific performance of the contract as written or not at all. A court cannot make a contract for the parties and then decree its performance. P.R.T. Inv. Corp. v. Ranft, 363 Mo. 522, 252 S. W. 2d 315; Drake v. Hicks, Mo. Sup., 249 S. W. 2d 358.

We think it clear that plaintiffs had a right to purchase Lot 39 and the west 40 feet of Lot 23. While they owned a part of Lot 23 (which lot adjoined Lot 24) they did not own the part that lay adjacent to Lot 24. However, we have decided that we need not determine what plaintiffs' rights would have been if only Lot 24 had been sold. The fact is that defendant has elected to sell all three parcels as one unit. Plaintiffs are not complaining of this manner of sale. They are not seeking to require her to sell the parcels separately or not at all. As we view the situation defendant cannot be permitted to nullify the right of plaintiffs to purchase Lot 39 and part of Lot 23 by including in a contract of sale another lot about which plaintiffs' right to purchase may be in question. Having elected to sell them all as a unit she appears to have recognized plaintiffs' right to purchase in that manner when she served the required notice upon plaintiffs and other adjoining owners. The giving of such notice would have been futile indeed unless defendant intended to initiate the 15-day period for pre-emption within which adjoining owners had the right to acquire the instant property upon the same terms as the proposed sale to the Longs. In this situation defendant cannot now be heard to say that plaintiffs do not have the right to purchase the property as a whole in the same manner and on the same terms she chose for the sale to the Longs. In support of a contrary assertion defendant cites De Witt

v. Stotts, Mo. Sup., 265 S. W. 2d 398; Andrews v. Washington Nat. Ins. Co. of Illinois, Mo. App., 93 S. W. 2d 1045; Phoenix Powder Mfg. Co. v. Wabash Ry. Co., 101 Mo. App. 442, 74 S. W. 492; De Castro v. Board of Com'rs of San Juan, 136 F. 2d 419. We have examined these cases and are of the view that they do not support the defendant's contention.

The final reason advanced by defendant, under Point II of her brief, for the invalidity of the so-called option privilege, is the rather tenuous one that the enforcement of the option is barred by the Statute of Frauds. The case cited in support of this contention is Casner v. Heaton, Mo. App., 237 S. W. 1042, which holds that the purchaser of property subject to a deed of trust cannot be held to have assumed the indebtedness unless it is in a manner that complies with the Statute of Frauds. In the instant case the contract of sale and the pre-emptive privilege to purchase are both in writing. The original deeds from the Development Company provide that the latter provision or restriction shall run with the land and bind all subsequent owners. We assume that it is defendant's contention that the petition should have alleged that she had assumed in writing the obligation of these restrictions and thereby agreed to be bound by the same. We see no merit in this contention. Moreover, it should be noted that it appears from the petition and exhibits attached thereto that defendant signed the "Extension of Restrictions."

In view of the decision we have reached in connection with the foregoing assignments, it is unnecessary to review certain other points briefed. It is our conclusion that the petition states a claim upon which relief could be granted and it follows that [84] the court erred in sustaining defendant's motion to dismiss.

The judgment is reversed and cause remanded. *Van Osdol* and *Coil, CC.*, concur.

PER CURIAM:—The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court. All the judges concur.