Thomas R. GILMORE and Juanita W.
Gilmore, Appellants,

v.

Clara B. LETCHER et al., Respondents.

No. KCD 26309.

Missouri Court of Appeals,
Kansas City District.

April 1, 1974.

Claude M. McFarland, Kansas City, for appellants.

James Borthwick, and John R. Phillips, Kansas City, Jack A. Cochran, and David L. Busch, Blue Springs, for respondents.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

## WASSERSTROM, Judge.

Plaintiffs sued for specific enforcement of a pre-emptive right to buy lots owned by the defendant Letcher at Lake Tapawingo which is a residential and recreational subdivision located in eastern Jackson County. The essential facts are undisputed, the disagreement between the parties being confined to questions of law.

Defendant Letcher owns Lots 62, 42, 43 and the East half of Lot 44, Block E, of Lake Tapawingo. Each of those lots is subject to the following restrictive covenant of record:

"No sale of said lot shall be consummated without giving at least 15 days' written notice to Grantor, and the owners of the two lots adjoining said lot on the sides, of the terms thereof; and any of them shall have the right to buy said lot on such terms. Such notice shall be personally served if service can be made on the subdivision; if any person entitled to service cannot be found on the subdivision notice shall be mailed such person at his address last known to the Grantor. Affidavit of the person making service shall be sufficient evidence thereof to protect a purchaser."

Lots 41 through 45 are contiguous in order from east to west. The most easterly of those lots is Lot 41, owned by Lake Tapawingo Development Company, Inc. (hereinafter referred to as Development Company), and it is immediately adjacent on the East to Lot 42 owned by defendant Letcher. Defendants Mossman own the West half of Lot 44 and all of Lot 45, which are adjacent on the West to the Letcher property.

Letcher's Lot 62 lies immediately to the North of Lots 41 through 44. Plaintiffs' Lot 61 is adjacent on the West to Letcher's Lot 62, but plaintiff's Lot 61 is not adjacent to any of Letcher's other Lots, 42, 43 and 44.

On May 29, 1970, Letcher entered into a contract for the sale of all of her lots above mentioned to defendants Spalding for the sum of $13,000, with a down deposit of $300 and the balance to be paid on delivery of deed. On July 10, 1970, Letcher mailed notice of the proposed sale to plaintiffs, enclosing therewith a form of waiver for signature by plaintiffs. Instead

of waiving their pre-emptive rights, however, plaintiffs responded by letter dated July 14, 1970, stating that they wished to exercise their pre-emptive right to the 3½ lots and they enclosed their $300 check as a down deposit. No similar notice or request for waiver was sent by Letcher to either the Mossmans or Development Company.

On July 20, 1970, Letcher returned plaintiffs' $300 check, together with a covering letter in which she stated in part:

"The sale transaction has been been abandoned. I have not given the required 15 days' notice to the other owners of adjoining lots, and no longer intend to do so. This letter is a cancellation of the previous notice of sale and waiver sent to you and is a rejection of your offer to purchase said property."

The next day, on July 21, 1970, Letcher entered into a new contract with the Spaldings on exactly the same terms, except that Lot 62 was deleted from the property being sold. Inasmuch as plaintiffs owned no property adjacent to the 2½ lots specified in the July 21 contract, no notice of this second sale was sent to them. A waiver was procured, however, from the Mossmans respecting this new contract.

Notwithstanding the purported cancellation of the original contract and the execution of the new contract dated July 21, plaintiffs continued to insist on a pre-emptive right to purchase all 3½ lots and failing in their efforts to obtain a recognition of those rights, they filed the present lawsuit on September 28, 1970. Named as defendants were Letcher, the Spaldings, the Mossmans and Development Company. The defendant last named stipulated that it makes no claim to any of these 3½ lots and has no desire to purchase or participate in the purchase of them. The Mossmans acknowledged in deposition that if they ever had any desire to purchase those lots, they no longer so desired at the time of deposition, and stipulated to their waiver of any pre-emptive rights.

However, Letcher and the Spaldings did vigorously deny that plaintiffs have any right of purchase. Their grounds of resistance and plaintiffs' rejoinders as to each ground may be summarized as follows: (1) Defendants claim that the restrictive covenant is so ambiguous that it cannot be enforced; plaintiffs rejoin that any ambiguities are irrelevant under the present facts. (2) Defendants claim that the restrictive covenant is an unreasonable restriction on alienation; plaintiffs respond that there is no unreasonableness. (3) Defendants claim that the notice sent by Letcher to the plaintiffs on July 10, 1970, was not in compliance with the covenant and therefore void; plaintiffs respond that Letcher cannot take advantage of her own default and in any event they are willing to accept a quit claim deed from Letcher for such interest as she has. (4) Defendants contend that Letcher is no longer willing to sell Lot 62, that plaintiffs have no right to force her to sell, and that so long as she continues to own Lot 62, plaintiffs are not owners of any property adjacent to property which Letcher is willing to sell and therefore have no pre-emptive right relating to the presently pending sale. Plaintiffs' respond that Letcher had no right to withdraw her willingness to sell Lot 62 after plaintiffs' letter of July 14, 1970; and in addition, they contend that the purported abandonment of the original sale and substitution of a new sale to the Spaldings was a conspiracy to defraud plaintiffs of their rights.

The trial court entered judgment denying relief to the plaintiffs, basing that ruling on the grounds that Letcher had abandoned the original sale; that plaintiffs had no right to require a sale of all 3½ lots and that Letcher had the right to withdraw from the original sale with Spaldings; that the new sale dated July 21, 1970, was for substantially less real estate than the May 29 sale, and that the change was not the result of a conspiracy between the defend-

ants to defraud plaintiffs of any pre-emptive rights of purchase. Plaintiffs appeal from those rulings.

## I.

Preliminary to consideration of the merits, disposition must be made of certain pending motions. The Spaldings and Development Company have moved to dismiss this appeal on the ground that plaintiffs' jurisdictional statement is insufficient. Plaintiffs, as appellants in this court, state at the very outset of their brief the nature of the case. They then state:

"Under Article V, Sec. 3 [V.A.M.S.] of the Constitution in effect on January 1, 1972, the appellate jurisdiction is vested in the Missouri Court of Appeals, since the nature of the case does not fall within any of the categories of cases wherein the Supreme Court has retained exclusive jurisdiction."

This statement is adequate to meet the requirements of Rule 84.04(b), V.A.M.R. The motions to dismiss the appeal are therefore denied.

The remaining pending motion is that of plaintiffs to strike the brief of Development Company. The reason asserted is that Development Company has waived its preemptive right of purchase and "is therefore no longer a party in interest." Development Company has, in fact, filed an able brief in support of the validity of the restrictive covenant, which obviously represents a matter of considerable concern to the Development Company and which is a very pertinent issue argued extensively on this appeal. The motion to strike Development Company's brief is denied.

## II.

Plaintiffs' entire position in this case necessarily rests upon the restrictive covenant under which they claim a preemptive right of purchase. Defendants Letcher and Spaldings strongly attack the validity of that covenant on the grounds of ambiguity. Their heaviest attack is leveled at the fact that the covenant grants preemptive rights only to the owners of the "two" lots adjoining and makes no provision for a situation such as here where there are more than two owners of adjoining lots. These defendants also attack the lack of specificity as to the method of service upon adjoining owners, the method of exercising preemptive rights, and the matter of priority of rights if more than one adjoining owner elects to exercise a right of preemption. These objections will not be considered for the same reason that similar objections were passed in Beets v. Tyler, 365 Mo. 895, 290 S.W.2d 76 (1956). Here, as in the *Beets* case, the objections are not being pressed by adjoining owners who are the only ones who might be prejudiced by lack of specificity in the regards mentioned. Both Development Company and the Mossmans have disclaimed any right to pre-emptive purchase in any of the Letcher lots. Accordingly, the following ruling in the *Beets* case is applicable:

"Next, defendant contends that the provision for purchase is invalid and unenforceable because its terms are so indefinite and uncertain as to be ambiguous and meaningless. An examination of the provision discloses no uncertainty when applied to the facts in the instant case. But defendant hypothesizes several situations of fact that might possibly occur in another case and which perhaps might present difficult problems for solution. For example, she suggests that all three of the possible purchasers might avail themselves of the right to purchase at the same time, and inquires further as to the effect of the provision on judicial sales and other related problems. It would seem sufficient to observe that none of these questions are presented by the facts of this case and they may never arise. We limit our decision in this case to the facts now presented and pretermit hypothetical situations until such questions actually arise."

### III.

▮ Defendants Letcher and Spaldings contend that the restrictive covenant here, if given effect, would constitute an unreasonable restriction on alienation. Substantially the same argument was made concerning the virtually identical restrictive covenant in *Beets*, supra, and was there rejected by the Missouri Supreme Court.

### IV.

▮ Defendants Letcher and Spaldings object that the provisions of the restrictive covenant with respect to service of notice have not been met for two reasons. First, they say the covenant requires personal service of the 15 days' notice of sale upon the adjoining lot owners, whereas the notice here was sent to plaintiffs by mail instead of being personally served. This objection is without merit. The provision for personal service is for the benefit of the adjoining lot owners entitled to notice, and the only one who could be prejudiced in this case by the form of notice mentioned would be the plaintiffs. Since they make no complaint as to the form of notice and have waived personal service upon them, that waiver ends the matter.

Second, these defendants object that no written notice of the May 29th sale was ever delivered to the Mossmans. The proper party to make that objection would have to be Mossmans. They having formally stipulated before trial to their waiver of any pre-emptive rights, any problem in this respect has been eliminated. In any event, Letcher and Spaldings have no standing to urge this point.

### V.

The underbrush having been cleared away, the principal question in this case can now be approached. This main issue is the contention by defendants Letcher and Spaldings that the restrictive covenant gives plaintiffs a right to purchase only if Letcher is willing to sell, and that since Letcher is no longer willing to sell Lot 62, plaintiffs cannot force her to do so. This argument rests upon the assumption that Letcher had a right to and did change her mind about selling Lot 62 on July 20, 1970.

Grave doubt must be expressed as to whether the purported change of mind on July 20, 1970, was in fact a good faith abandonment of the original sale or whether on the other hand it was only a subterfuge by which to try to avoid plaintiffs' pre-emptive right to purchase. This doubt is engendered by the facts that a portion of the house being sold was located on Lot 62, purportedly deleted from the second sale; the fact that Letcher and the Spaldings informally agreed between themselves that the Spaldings would have "the use" of Lot 62, despite the purported deletion of that lot from the sale; the fact that the purchase price remained exactly the same depite the fact that the second contract purportedly covered only 2½ lots instead of the original 3½ lots; and the fact that the same $300 check originally deposited by the Spaldings under the first contract remained in the hands of Letcher without change or return at all times after the original contract of May 29, 1970. However, this question need not be pursued for the reason that whether or not Letcher wanted in good faith to abandon the May 29 contract, it was beyond her power to do so, even with the consent of the Spaldings, after the exercise by the plaintiffs of their pre-emptive right by their letter of July 14, 1970.

Defendants' contention that Letcher, with the concurrence of the Spaldings, had a right to abandon the original sale, is based upon certain language in the *Beets* case, 290 S.W.2d at 81, which states that "[a] pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell * * *." The attempt to find support for defendants' argument in that partial quotation represents a misconstruction of the *Beets* opinion and is in-

consistent with the nature and purpose of a pre-emptive right such as held by plaintiffs here.

■■ The authorities describe the right of pre-emption as a conditional option under which the pre-emptioner has the right to purchase subject to some condition, the condition being generally (despite variation in phraseology) that the owner must first arrive at a decision to sell. This character of pre-emptive rights is set forth in Restatement, Property § 413(1), under which Comment b states that the rights of the pre-emptioner "are contingent upon the desire of the owner to sell" and are therefore "analogous to options upon a condition precedent." When the owner does arrive at a decision to sell the property, then the condition precedent becomes fulfilled and the pre-emptive right, which theretofore was merely contingent, at that point ripens into a full option. As stated in Kershner v. Hurlburt, 277 S.W.2d 619, 1. c. 623 (Mo.1955), when the owner arrives at the decision to sell, then the offeree "had a short-lived option to purchase in accordance with the terms of his agreement." Once the pre-emptioner-offeree accepts the offer by exercising his option, the contract of sale becomes complete and enforceable. Barling v. Horn, 296 S.W.2d 94, 1. c. 98 (Mo.1956); Price v. Town of Ruston, 19 La.App. 356, 139 So. 55, 1. c. 58 (1932).

A case involving a situation very closely akin to the one here is New Haven Trap Rock Co. v. Tata, 149 Conn. 181, 177 A.2d 798, 1. c. 800 (1962). In that case the plaintiff, grantor of certain land, had a pre-emptive right to purchase. On May 2, 1960, the defendant, grantee, gave 60 days' written notice of intention to sell. On June 23, 1960, the plaintiff elected by letter to repurchase. Then on June 29, 1960, defendant wrote saying that he was not going to sell at that time. Instead he executed a 50 year lease to the third party who had initially proposed to purchase the land in question. The court held that the plaintiff was entitled to specific performance of his pre-emptive option:

"The right of the plaintiff to exercise its privilege of repurchasing arose when it received notice from Tata, on May 2, 1960, that he was considering the sale of the property. * * * A contract, binding on both parties, resulted when the plaintiff by its letter of June 23, 1960, elected to exercise its right to repurchase under the terms of the deed. [citing cases]"

■ Applying the principles enunciated by the foregoing authorities, the following conclusions are compelled. The restrictive covenant here was intended to and had the effect of granting plaintiffs an option to purchase, subject only to the condition that Letcher first arrive at a decision to sell the property. Letcher did decide to sell and in fact executed a binding contract of sale on May 29, 1970, thereby satisfying the condition which theretofore had bound down the pre-emptive right. Upon the condition being so satisfied, plaintiffs' right matured into a full option, which Letcher recognized by her notice dated July 10, 1970. This notice had the effect, as stated in the *Beets* opinion, 290 S.W.2d at page 83, of initiating the 15 day period for pre-emption. When plaintiffs exercised their option within that 15 day period, their acceptance completed a contract of sale between plaintiffs and Letcher. From that point forward, it was too late for Letcher to withdraw without plaintiffs' consent. Plaintiffs have a right to specific performance.

The judgment is reversed and the cause remanded with instructions to enter a decree requiring defendant Letcher to convey to plaintiffs the property described in the real estate contract of May 29, 1970, for the purchase price of $13,000. Costs on this appeal are assessed against defendants Letcher and Spaldings.

All concur.