**GIRARDEAU CONTRACTORS, INC.,**
**Plaintiff-Appellant,**

v.

**MISSOURI HIGHWAY AND TRANS-**
**PORTATION COMMISSION,**
**Defendant-Respondent.**

**No. WD33239.**

Missouri Court of Appeals,
Western District.

Dec. 21, 1982.

Daniel E. Wilke, Brinker, Doyen & Kovacs, P.C., Clayton, for plaintiff-appellant.

Bruce A. Ring, Paula Lambrecht, Curt Thompson, Missouri Hwy & Transp. Com'n., Jefferson City, for defendant-respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

WASSERSTROM, Judge.

Plaintiff sues for damages under a contract by which it undertook as the prime contractor certain highway work for defendant. Trial commenced before a jury, but at the close of all the evidence the trial court sustained a motion for directed verdict, from which ruling plaintiff appeals. Defendant contends the appeal should be dismissed because plaintiff's brief here as appellant violates Rule 84.04. That contention is denied. On the merits of the appeal, we affirm.

The work under the contract consisted of removing 7,000 feet of concrete median and

6,500 feet of double faced guardrail and constructing in place thereof a new continuous concrete median barrier to meet interstate standards. Highway Contractors, a subcontractor hired by plaintiff, removed the old guardrail and stockpiled it in the right-of-way. Defendant took possession of this guardrail material, contending that it had the right to do so. Plaintiff challenges that right and claims damages for defendant's act in appropriating the guardrail. That dispute gives rise to this lawsuit.

The contract between the parties incorporated the Missouri Standard Specifications for Highway Construction Work, of which three subsections are pertinent here. Section 202.22.2, which is part of the section dealing with "Removal of Improvements" provides that: "Material not designated for salvage will be considered the property of the contractor...."

The only portion of the contract or specifications which designate guardrail for salvage is Section 104.9.2 which is part of the section dealing with "Final Cleaning Up." This section reads as follows:

"The contractor shall cut all brush, grain, grass, and weeds from the entire right-of-way except for improved or selected areas shown on the plans or designated by the engineer, and shall clean and remove from the right-of-way all abandoned fences, telephone and power line facilities, surplus and discarded material, any perishable matter, rubbish, and temporary structures. The vegetation on the right-of-way outside of the construction limits shall not be removed by blading. All guard rail materials within the right-of-way shall remain the property of the Commission and shall be stored on the right-of-way as directed by the engineer. The contractor shall restore in an acceptable manner all property, both public and private, which may have been damaged on account of the prosecution of the work, and shall leave the right-of-way neat and presentable. All areas outside the rounding of fill slopes and backslopes, on which the existing turf is damaged by the contractor's operations, shall be re-

stored by the contractor, at his expense, by seeding and mulching such areas at the rates designated in the contract, or as directed by the engineer." (Underscoring added.)

Following the subsection just quoted, there appears Section 104.9.4 which provides as follows:

"Final cleaning up in accordance with the provisions of Sec 104.9.2 will not be required when the principal part of the contract consists of traffic signals, lighting, signing, fencing, plantings, surfacing, or resurfacing work. When the principal part of the contract consists of these items, the contractor shall remove all excess excavation and all rejected or unused materials and debris from the right-of-way or as directed by the engineer and shall restore to a satisfactory condition all shoulders and slopes defaced by the contractor's operations...."

The issue for determination in this case is whether the underscored sentence of Section 104.9.2 gives defendant the right to the guardrail material, or whether any right by defendant under that sentence has been eliminated by virtue of Section 104.9.4.

### I.

The first question debated by the parties is whether its contract qualifies under Section 104.9.4 as one in which "the principal part of the contract consists of ... resurfacing work." The evidence shows that under the Commission's rules and practice, plaintiff could qualify as a prime contractor only if it did a majority of the contract work itself. Plaintiff is a surfacing and resurfacing contractor, and it did do all of the resurfacing work on this job, which consisted of 5.79 miles of four-lane interstate highway surfacing. That part of the contract amounted to $721,200 out of the $900,250 total contract price. The balance of the work consisted of non-surfacing work done by two subcontractors for which the total cost was $179,050.

Despite defendant's argument that the principal purpose of this contract was

the construction of a new median, rather than resurfacing, the evidence establishes plaintiff's contention that the resurfacing here was the principal part of the contract, so as to bring it within the scope and operation of Section 104.9.4.

## II.

The second and the more difficult point debated by the parties is whether Section 104.9.4 was intended to eliminate the sentence in Section 104.9.2 granting the defendant the right to the guardrail materials. The trial court deemed the contract to be ambiguous in this regard and gave plaintiff an opportunity of a jury trial to establish the affirmative of that proposition. However, after hearing all of the evidence, the court concluded that there was no real issue of fact for jury determination, and the court directed a verdict for defendant. Plaintiff says that action was error for these reasons: (1) the contract was unambiguous in its favor and the court should have so declared; (2) if the contract was ambiguous, then the resolution of the ambiguity became a jury issue; and (3) in any event this was a contract of adhesion and the jury should have been permitted to pass upon the reasonable expectation of the parties.

Defendant, on the other hand, counters as follows: (1) the contract was unambiguous in its favor and the court should have so declared without hearing any extrinsic evidence; (2) even if the contract were to be considered ambiguous, the evidence did not make a jury question and the court properly interpreted the contract as a matter of law; and (3) the contract here is not one of adhesion. We have concluded that defendant is correct on all three of its points.

### A.

■ Section 104.9.4 plainly states and intended that on resurfacing jobs, such as the one here, the "final cleaning up" shall not be as set forth in Section 104.9.2, but instead shall be as described in the second sentence of Section 104.9.4. That intention left untouched the separate and essentially unrelated sentence in Section 104.9.2 regarding salvage right in the guardrail material.

In our view that reading clearly appears from the language used, and no other intention can reasonably be read into it. Accordingly the trial court should have so declared as a matter of law. *J.E. Hathman, Inc. v. Sigma Alpha Episilon Club,* 491 S.W.2d 261 (Mo. banc 1973); *Harris v. Union Elec. Co.,* 622 S.W.2d 239 (Mo.App.1981).

■ Even though the trial court did not rule in favor of defendant on this basis, the judgment may still be affirmed on this ground. Even if a motion for directed verdict is granted on the wrong ground, if the ruling was proper, the reason assigned is immaterial. *Stewart v. Zuellig,* 336 S.W.2d 399 (Mo.1960).

### B.

■ Even if the contract could be considered ambiguous, that does not necessarily mean that there is a jury question. The court itself must still declare the meaning of the contract unless the evidence admitted raised a real issue of fact to be resolved by the jury. *Commerce Trust Company v. Howard,* 429 S.W.2d 702 (Mo.1968); *Busch & Latta Painting v. State Highway Com'n,* 597 S.W.2d 189 (Mo.App.1980); *National Corp. v. Allan,* 280 S.W.2d 428 (Mo.App. 1955).

■ Here the evidence adduced strongly favored defendant and left no factual determination which could reasonably be made in favor of plaintiff. Plaintiff's principal witness to prove the meaning of the contract in its favor was Gibson, the executive vice president of Highway Contractors Inc., the subcontractor which removed the old guardrail. Gibson testified that prior to the letting of this contract, he discussed it with Metheny, plaintiff's vice president, and that they discussed between them a price for the subcontract removal work. Gibson testified that in making his bid for the subcontract work he established a cost as to what he felt the salvage value was and that "when we looked at them and

reviewed the specifications and knew that the guardrail would be ours, we then determined what it would be worth and so we would then deduct that off of what our charges would be or our bid would be."

However, Metheny testified in direct contradiction. Metheny testified that when he submitted the bid to defendant, he was not relying on any subcontractor quotations and in fact did not intend to subcontract the work at all. Further testimony by Metheny was as follows:

"Q. Did Mr. Gibson at that time discuss at all with you the removal of guardrail on this project or the ownership of any guardrail that would be removed?

A. No, no."

Metheny's testimony further went:

"Q. At the time that you prepared the bid on this project, was it your intent that the guardrail involved, to be removed in this project, would belong to Girardeau Contractors or remain the property of the Highway Commission?

A. We never considered it one way or the other.

Q. Just let me—what was your intent at the—what was Girardeau Contractors' intent at the time of the bid being submitted?

. . . .

Q. Intent as to the ownership of the guardrail that was removed in this project?

A. We never considered it."

Plaintiff's president Harrison also testified that he recalled no discussion as to ownership of the salvage guardrail on the project prior to the submission of plaintiff's bid. In this connection he testified: "I did not discuss guardrail pro or con or salvages or anything about guardrail with anyone prior to the controversy arising. I was not aware that there was even any guardrail to be salvaged on the project."

Thus there was no substantial evidence to show that plaintiff believed at the time of bidding that it or its subcontractor would have the benefit of the guardrail salvage. On the other hand, defendant's Division En-

gineer of Construction Shaw testified unequivocally: "[I]t was our intent that we would retain the salvage guardrail material." Furthermore, Shaw gave a very understandable and persuasive explanation of the intent and purpose of Section 104.9.4:

"A. Yes. The normal requirement on a construction project is that the contractor is required to clean up the entire right-of-way; mow the grass, pick up all—whatever is there, before we will accept it. The purpose of 104.9.4 in modifying the final clean up requirements is in those small projects involving only— where the principal part is only traffic signals, lighting, signing, fencing, plantings, surfacing or resurfacing, we require him to clean up only what he tears up. For instance, if he were to resurface Route 63 from here to Columbia, we would not require him to mow the entire right-of-way as Section 104.9.2 required without modification, so 104.9.4, simply modifies that and says he will clean up only what he tears up."

Plaintiff lays much emphasis on the fact that defendant has revised Section 104.9.2. On February 9, 1978, the Commission's Design Committee did propose to amend Section 104.9.2 by taking out the sentence about guardrail material and shifting that sentence to Section 202.20 dealing with "removal of improvements." The contract in suit here was executed February 17, 1978. The change in the specifications became effective in May, 1978. Plaintiff seeks to attribute significance to this change on the ground that the court "can look to the conduct of the parties to determine the meaning of the contract." We cannot regard the change in specifications here as falling within that rule. Nor can we consider that change as reflecting any admission against interest on the part of the Commission. Note should be made that Shaw, who was a member of the Design Committee, testified that this change had nothing to do with the contract in suit here.

### C.

With respect to the matter of "adhesion contract", plaintiff places heavy reliance

upon *Estrin Const. Co., Inc. v. Aetna Cas. & Sur.,* 612 S.W.2d 413 (Mo.App.1981). It cites that opinion for the proposition that in the case of an adhesion contract, whether it be ambiguous or unambiguous, the controlling question is the reasonable expectation of the parties. Plaintiff argues that such is the question here and that the matter of reasonable expectation should have been submitted to the jury.

■ Plaintiff's argument can be sufficiently answered by saying that the contract here was not one of adhesion. *Estrin* carefully distinguishes between contracts reached on the basis of negotiation as against contracts imposed as a matter of adhesion. The *Estrin* opinion states at 612 S.W.2d 419: "In a negotiated contract, the words of agreement describe the terms of the bilateral assent and so—when stated unambiguously—are sufficient to disclose the reasonable expectations of the parties."

The contract here is a negotiated one within the meaning of *Estrin*. While defendant unquestionably drafted the contract specifications, that was only part of the contract. It still remained for plaintiff and each other bidder to submit a dollar bid in light of the specifications given. If the specifications called for the guardrail to belong to the Commission, it would be supposed that the bidders would submit a higher bid for the contract work. On the other hand, if the specifications called for the guardrail salvage to belong to the contractor, then it could be expected that the bid price would be lower. Thus there can be no question but that the contract with regard to salvage rights and contract price (which go together) constituted a genuine negotiated proposition.

The judgment was for the right party and is affirmed.

All concur.