Norman S. GAINES, et al.,
Plaintiffs-Appellants,

v.

Van GIBBS, et al.,
Defendants-Respondents.

No. 14229.

Missouri Court of Appeals,
Southern District,
Division One.

May 13, 1986.

James E. Spain, Hyde, Purcell, Wilhoit, Spain, Edmundson & Merrell, Poplar Bluff, for plaintiffs-appellants.

C.H. Parsons, Jr., Dennis P. Wilson, Parsons, Mitchell & Wilson, Dexter, for defendants-respondents.

FLANIGAN, Judge.

Plaintiffs appeal from an order of the trial court dismissing the action on the motion of defendants. The ground of the motion was that the petition failed to state a claim upon which relief can be granted. Prior to the dismissal both sides, by stipulation, presented to the court an order of the Public Service Commission dated September 11, 1979. In its order of dismissal the trial court stated "that the issues represented by the pleadings in this cause were decided by the Public Service Commission, and that decision cannot be collaterally attacked in this action." Defendants-respondents, seeking to uphold the order of the trial court, make no claim that the petition was defective on any ground other than that assigned by the trial court.

Plaintiffs brought this action in the Circuit Court of Stoddard County to enforce, or at least to obtain declaratory relief concerning, what the petition labels "a restrictive covenant" imposed upon Ecology Acres Subdivision which is located in Stoddard County. Plaintiffs are various lot owners in the subdivision and by their petition claimed to be entitled to the benefit of the restrictive covenant.

In 1973 Emerson E. Tucker and Naomi C. Tucker, his wife, dedicated the subdivision and recorded a plat of it which included the terms of the restrictive covenant, which reads:

"No private sewage disposal system shall be constructed on any lot by the lot owner, other than installation of a septic tank. This covenant shall not be construed to prohibit the installation of a central sewage disposal system by Emerson E. Tucker and Naomi C. Tucker, his wife, or any corporation formed by them for that purpose, or any person or corporation to whom they may transfer ownership of the lagoon site shown on said Subdivision, and at such time as a central sewage disposal system is installed, each

lot owner agrees to immediately disconnect from his individual disposal system and to connect to the central disposal system. *There shall be no cost to the lot owner in connecting to the central disposal system,* but each lot owner agrees to pay the monthly service charge for use of said system as determined by the owner of said system and approved by the Missouri Public Service Commission or other regulatory agency having jurisdiction thereof." (Emphasis added.)

Some of the plaintiffs obtained title to their respective lots by conveyances from the Tuckers. Other plaintiffs obtained their titles by conveyances from several of the defendants. An additional defendant is Stoddard County Sewer Company, Inc., a Missouri corporation, ("the sewer company"). In general the petition alleges that the defendants assumed the burden of the restrictive covenant, including the emphasized portion of it.

On September 11, 1979, the Public Service Commission entered an order granting the sewer company a certificate of convenience and necessity to construct a sewer system in the subdivision. The "findings of fact" portion of that order discusses a "connection charge" or a "connection fee." The order itself did not purport to impose such a charge or fee nor state its amount. Under the terms of the order, the sewer company was required, within 30 days from the order's effective date, to "file with the Commission *for its approval* a schedule of rates, rules and regulations *substantially* in conformity with this Report and Order; that the [rates, rules and regulations] include a provision that any plant ... constructed with ... connection fees shall be, in the event of the subsequent transfer of utility property, donated to the purchaser of the system...." The order further required the sewer company to "submit to the Commission for its approval, prior to commencing sewer service, a proposed form of notice to its customers of the connection fee and of the time period within which such fee may be paid without interest due."

The petition (filed April 7, 1981) does not allege, nor does the record otherwise reflect, whether the sewer company took any action pursuant to the Commission's order. The record does not reflect whether the "schedule of rates, rules and regulations" mentioned in the order was thereafter filed by the sewer company with the Commission or approved by the latter or whether, if approved, the schedule contained provisions with respect to connection charges. There is no allegation or showing whether the sewage system has been installed.

The Public Service Commission is not a court, *State ex rel. Wash. Univ. v. Public Service Commission,* 308 Mo. 328, 272 S.W. 971, 972 (1925); *State ex rel. Kansas City v. Public Service Commission,* 360 Mo. 339, 228 S.W.2d 738, 741[1] (1950), and it has no power to construe or enforce contracts, *State ex rel. Wash. Univ. v. Public Service Commission,* supra; *Wilshire Const. Co. v. Union Elec. Co.,* 463 S.W.2d 903, 905[1] (Mo.1971). The orders of the Commission are not judgments or adjudications, *State ex rel. Kansas City v. Public Service Commission,* supra, 228 S.W.2d at 741[1]. The Commission does not exercise judicial power or authority, *State ex rel. C.R.I. & P.R.Co. v. Public Service Comm'n,* 441 S.W.2d 742, 748[6] (Mo.App.1969); *State ex rel. Fee Fee Trunk Sewer, Inc. v. Litz,* 596 S.W.2d 466, 468 (Mo.App.1980), and it cannot enter a money judgment, *Wilshire Const. Co. v. Union Elec. Co.,* supra; *State ex rel. Fee Fee Trunk Sewer, Inc. v. Litz,* supra. In fixing rates the Commission exercises a legislative function. *State ex rel. Kansas City v. Public Service Commission,* supra, 228 S.W.2d at 741[2].

The act creating the Commission is traceable to the police power of the state. *State ex rel. City of Sedalia v. Public Service Commission,* 275 Mo. 201, 204 S.W. 497, 498 (Mo.1918); *Kansas City Bolt & Nut Co. v. Kansas City Light & Power Co.,* 275 Mo. 529, 204 S.W. 1074, 1075 (Mo. banc 1918); *State ex rel. Wash. Univ. v. Public Service Commission,* supra, 272 S.W. at 973. The fixing of reasonable

rates for public service is an exercise of the sovereign power of the state which cannot be contracted away. *State ex rel. Sedalia v. Public Service Commission,* supra, 204 S.W. at 499; *Kansas City Bolt & Nut Co. v. Kansas City Light & Power Co.,* supra.

■ All contracts concerning rates are made in contemplation of the power of the state to fix rates and an order of the Commission which fixes reasonable rates is not invalid on the ground that it impairs the obligation of contract between the customer and the utility, *City of Fulton v. Public Service Commission,* 275 Mo. 67, 204 S.W. 386[2] (Mo. banc 1918); *State ex rel. Wash. Univ. v. Public Service Commission,* supra, 272 S.W. at 974[5], whether the customer be a city, *State ex rel. Sedalia v. Public Service Commission,* supra, or a private consumer, *Kansas City Bolt & Nut Co. v. Kansas City Light & Power Co.,* supra.

■ Rates fixed by the Public Service Commission supersede rates set by contracts. *State ex rel Sedalia v. Public Service Commission,* supra, 204 S.W. at 499; *Kansas City Bolt & Nut Co. v. Kansas City Light & Power Co.,* supra, 204 S.W. at 1075. When a controversy arises over construction of a contract or a rate schedule on which a contract is based, and a claim of overcharge is made, only the courts can require an accounting or render judgment for the overcharge. *Wilshire Const. Co. v. Union Elec. Co.,* supra.

■ As the foregoing authorities demonstrate, the Commission had no authority to determine the validity of the restrictive covenant or to construe it or enforce it and in fact the Commission made no attempt to do so. The Commission's order of September 11, 1979 was, in view of its tenor, an interim order which contemplated additional action on the part of the sewer company with respect to filing "a schedule of rates, rules and regulations." That schedule would thereafter be subject to the approval of the Commission. There is nothing in the record to show that such a schedule was filed or, if so, what provision, if any, it made concerning a connection charge or whether such a charge was approved by the Commission.

As the supreme court said in *Beets v. Tyler,* 365 Mo. 895, 290 S.W.2d 76, 82[16] (1956), "We limit our decision in this case to the facts now presented and pretermit hypothetical situations until such questions actually arise." See also *Gilmore v. Letcher,* 508 S.W.2d 257, 260 (Mo.App.1974).

■ Contrary to the language of the trial court's order, the Commission did not decide "the issues represented by the pleadings in this cause." There was no factual basis for the trial court to dismiss the action on the ground that connection charges had been imposed upon the plaintiffs and that the imposition was authorized by the Commission. Prior to the filing by the sewer company of a schedule imposing a connection charge, and the approval of that schedule by the Commission, the trial court had no authority to determine what legal effect, if any, such action of the Commission would have upon the restrictive covenant or plaintiffs' right to obtain appropriate relief from some or all of the defendants.

The order of dismissal is set aside and the cause is remanded for further proceedings.

TITUS, P.J., and GREENE, J., concur.