In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-1774

BRISTOL-MYERS SQUIBB COMPANY,

*Plaintiff-Appellee*,

*v.*

IKON OFFICE SOLUTIONS, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 99-48-C -H/H—**David F. Hamilton,** *Judge.*

ARGUED SEPTEMBER 25, 2001—DECIDED JULY 1, 2002

Before ROVNER, DIANE P. WOOD, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Bristol-Myers Squibb Company ("Bristol-Myers") filed a complaint with the district court to determine whether it had the right to cancel a contract that it had entered into with Ikon Office Solutions, Inc. ("Ikon") for photocopy equipment and services. The district court granted summary judgment in favor of the plaintiff after determining that Bristol-Myers had the unconditional right to terminate the contract subject only to the payment of the agreed upon cancellation fee. Ikon appeals and we affirm.

## I.

On December 29, 1995, Bristol-Myers entered into a lease agreement with Modern Business Systems, which is now known as Ikon. The lease required Ikon to provide photocopy equipment and services to the Bristol-Myers Mead Johnson Nutritional Facilities in Evansville, Indiana for a term of five years. After approximately one month of negotiations, and several draft agreements, the parties signed a contract consisting of a preprinted form and a typed addendum. The preprinted portion of the contract states, "This lease is noncancelable," but provides a space for "Other Options and Conditions." Within that space, Ikon typed, "See Addendum #1 for terms and conditions." The relevant language in Addendum #1 is as follows:

> Throughout the length of the 5 year contract, Modern Business Systems will consider renegotiation of the cost per copy pricing to match competitor bids to Bristol-Myers Squibb Corporate Office. Cancellation Penalty is 25% of the remaining equipment portion of the contract:
>
>     1 year into contract    $142,560
>
>     2 years into contract  $106,920
>
>     3 years into contract  $  71,280
>
>     4 years into contract  $  35,640
>
> Approximately $32,000 penalty to cancel Xerox rentals can be rolled into the cost per copy at any time during the contract. The cost per copy increase will be determined by how many months remain in the contract. If the contract is canceled for any reason, Bristol-Myers Squibb will be responsible for the remaining portion of the money sent to Xerox, to be added to the cancellation penalty.

Two years after signing the contract, in late 1996, Bristol-Myers' corporate office began soliciting bids for the pro-

vision of photocopying equipment for all of its facilities nationwide, including the Mead Johnson Nutritional Facilities. After finding a suitable bidder, Bristol-Myers sent a letter notifying Ikon that it was terminating the contract pursuant to the cancellation terms. Ikon responded that Bristol-Myers could not cancel the lease before first giving Ikon the opportunity to match any competitive bid. Ikon gave Bristol-Myers the option of buying out the remaining months on the lease for an amount substantially greater than the cancellation fee.

Bristol-Myers then brought a declaratory relief action seeking a determination that it had complied with the terms of the contract and owed nothing further to Ikon. Bristol-Myers in turn moved for partial summary judgment seeking a determination that the contract (1) allowed for early termination, and (2) did not give Ikon a right of first refusal. The district court granted the motion for summary judgment, declaring that Bristol-Myers had the unconditional right to terminate the lease, subject only to the payment of the appropriate cancellation fee, and that the contract did not give Ikon a right of first refusal. Because the parties disagreed on the proper amount of the cancellation fee, the district court withheld entry of a final judgment and set a trial date to determine the proper amount of the fee. Shortly thereafter, the parties were able to reach agreement on the appropriate amount of the cancellation fee, and the district court entered final judgment on February 28, 2001. Ikon appeals.

## II.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Gawley v. Indiana Univ.*, 276 F.3d 301, 308 (7th Cir. 2001). We review the district court's ruling on summary judgment *de novo*, constru-

ing the record in the light most favorable to the nonmovant, Ikon. *Id.* Ikon contends that the district court erred by (1) rejecting the substantial extrinsic evidence offered by Ikon of the contracting parties' intent, (2) finding and declaring that the contract between the parties was unambiguous, (3) providing Bristol-Myers with an unconditional and unilateral right to terminate the contract at any time, subject only to the payment of an appropriate cancellation fee, and (4) finding that the contract did not give Ikon a right of first refusal.

The contract provides, and the parties agree, that the lease shall be governed by Missouri law. Under Missouri law, the cardinal rule of contract interpretation is to ascertain the intention of the parties and to give effect to that intention. *Sonoma Mgmt. Co. v. Boessen*, 70 S.W.3d 475, 479 (Mo. App. 2002) (citing *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973)). Unless the contract is ambiguous, the intent of the parties must be based on the contract alone, and not on extrinsic evidence. *Id.* The issue of whether a contract is ambiguous is a question of law. *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 19 (Mo. App. 2002). A contract is ambiguous only if its terms, when given their natural and ordinary meaning, are reasonably open to more than one meaning, or the meaning of the language used is uncertain. *Sonoma Mgmt. Co.*, 70 S.W.3d at 479. A contract is not ambiguous merely because the parties disagree over its meaning. *Id.* A court may not create an ambiguity by using extrinsic or parol evidence. *Lupo*, 70 S.W.3d at 20. Nor may it create ambiguities by distorting contractual language that may otherwise reasonably be interpreted. *Sonoma Mgmt*, 70 S.W.3d at 479.

As both parties agree, there is a plain and irreconcilable conflict between the preprinted form that states that the contract is "noncancelable" and the typewritten addendum that lays out the terms for cancellation on the assumption

that the contract may be "canceled for any reason." Ikon asserts that once an ambiguity is found in a contract, the ambiguity must be resolved by submission to a jury. Under Missouri law, however, the "mere fact of ambiguity does not automatically require intervention of a jury." *Busch & Latta Painting Corp. v. State Highway Comm'n of Mo.*, 597 S.W.2d 189, 198 (Mo. App. 1980). Even if a court finds that a contract is ambiguous, "the court must still declare the meaning of the contract unless the surrounding circumstances or other extrinsic evidence admitted on the ambiguity question raise issues of fact for the jury to resolve." *Id.* (internal citations omitted); *see also Auto Owners Mut. Ins. Co. v. Wieners*, 791 S.W.2d 751, 758 (Mo. App. 1990) (same); *Girardeau Contractors, Inc. v. Missouri Highway and Transp. Comm'n*, 644 S.W.2d 360, 363 (Mo. App. 1982) ("Even if the contract could be considered ambiguous, that does not necessarily mean that there is a jury question. The court itself must still declare the meaning of the contract unless the evidence admitted raised a real issue of fact to be resolved by the jury."); *Commerce Trust Co. v. Howard*, 429 S.W.2d 702, 705-06 (Mo. 1968) (declaring that, "where there is no real conflict of evidence upon any of the essential facts properly to be considered is [sic] construing the contract, and the true meaning of the words used is made clear by such evidence, it becomes the duty of the Court, and not the jury, to construe it") (quoting *National Corp. v. Allan*, 280 S.W.2d 428, 432 (Mo. App. 1955)). Before submitting the matter to a jury, a court first must attempt to construe the contract "based on all the circumstances, evidence, and rules of construction." *Vandever v. Junior Coll. Dist. of Metro. Kansas City*, 708 S.W.2d 711, 717 (Mo. App. 1986).

In this case, there are no essential facts that must be considered in construing the conflicting portions of the contract. The contradictory language in the contract refers solely to whether the contract may be cancelled or not, and

neither party disputes that the contract could be terminated. The parties only disagree as to the terms by which the contract may be cancelled. Furthermore, the meaning of the arguably ambiguous portion of the contract easily is construed by applying a well-known rule of construction as required by *Vandever*, and therefore the question is not one for submission to a jury. 708 S.W.2d at 717.

Under Missouri law, when a conflict arises between a preprinted portion and a typewritten portion of a contract, the typewritten language will prevail. *Silver Dollar City, Inc. v. Kitsmiller Constr., Co.*, 931 S.W.2d 909, 914 (Mo. App. 1996); *House of Lloyd, Inc. v. Director of Revenue*, 824 S.W.2d 914, 923 (Mo. 1992) (*overruled on other grounds* by *Spico, Inc. v. Director Revenue*, 875 S.W.2d 539 (Mo. 1994)). Missouri courts have turned to this rule and other such rules of construction, in the context of a motion for summary judgment, to resolve ambiguous language without submission to a jury. *See*, *e.g.*, *Hayward v. Taylor*, 807 S.W.2d 171 (Mo. App. 1991). Likewise, we may resolve any ambiguity over conflicting language of the contract— in this case whether the contract could be cancelled or not—by well-established principles of Missouri law for construing contracts. The addendum controls, and thus, Bristol-Myers has the right to cancel the contract.

The parties also dispute the terms under which the contract can be cancelled. Ikon claims that the following language gave it a right of first refusal: "Throughout the length of the 5 year contract, Modern Business Systems will consider renegotiation of the cost per copy pricing to match competitor bids to Bristol-Myers Squibb Corporate Office." Bristol-Myers contends that this language does not give rise to a right of first refusal, but rather merely reflects Ikon's willingness to renegotiate pricing. We find that the terms regarding the conditions of cancellation are not ambiguous in any material respect and did not give Ikon a right of first refusal.

Under Missouri law, a right of first refusal requires an owner, when and if that owner decides to sell, to offer the property first to the person who has the right of first refusal. *Schroff v. Smart*, 73 S.W.3d 28, 29, n.1 (Mo. App. 2002) (citing *Beets v. Tyler*, 290 S.W.2d 76, 81 (Mo. 1956)). The party with the right of first refusal may, but does not have to, elect to purchase the offered property. *Id.* If the party with the right of first refusal elects not to purchase the property, the owner may then sell to anyone it chooses. *Id.* An owner must make an offer to a holder of the right of first refusal before accepting an offer from a third party. *Unlimited Equip. Lines, Inc. v. The Graphic Arts Ctr., Inc.*, 889 S.W.2d 926, 935 (Mo. App. 1994). A right of first refusal is often given in connection with the sale or lease of real estate, but can be a part of any contract. *Id.* at 932.

Nothing in the disputed contract clause establishes any duty or obligation on the part of Bristol-Myers to give Ikon the right of first refusal. It does not require Bristol-Myers to notify Ikon of its intention to solicit competing bids, nor does it require Bristol-Myers to consider competing bids from Ikon. It merely does what the plain language says it does—it allows Ikon to consider renegotiating the cost per copy pricing to match competitive bids that Bristol-Myers might receive. This Court must give effect to the intent expressed by the plain language of the contract. *Wildflower Comty. Ass'n v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo. App. 2000). It may not give effect to a party's secret surmise or undisclosed assumption. *Peet v. Randolph*, 33 S.W.3d 614, 618 (Mo. App. 2000).

Missouri courts liberally find right of first refusal clauses to be specific enough to be enforced, even when they are missing some important terms. *See, e.g.*, *Peet*, 33 S.W.3d at 618 (lacking price and duration); *Unlimited Equip. Lines, Inc.*, 889 S.W.2d at 933-34 (lacking price terms, scope of right, and the type of transactions to which the right applied); *Barling v. Horn*, 296 S.W.2d 94, 95 (Mo. 1956)

(lacking price or method for determining price). Nevertheless, the agreements in each of these cited cases contained very explicit language granting a right of first refusal. *Peet*, 33 S.W.3d at 616 ("Buyers to have first right of refusal to any offer on the above mentioned 20 A tract if said tract is ever sold, wholly or in part, written first right of refusal to be executed at the time of closing of this contract"); *Unlimited Equip. Lines, Inc.*, 889 S.W.2d at 933 ("[GAC] agrees to give first right of refusal to [UEL] on all equipment that is to be released for the next twelve months"); *Barling*, 296 S.W.2d at 95 (if Lessors have "notified the Lessees in writing of their desire to sell the building and the premises prior to the expiration of this term . . . Lessees shall have the first opportunity to purchase the premises"). The contract in this case lacks any such explicit language granting a right of first refusal.

Corbin on Contracts discusses myriad terms that have been used to create a right of first refusal including, "first option to buy," "first privilege of buying," "preemptive option," "preemptive right," "preemptive right to purchase," "right of preemption," "first right of purchase," "first refusal-to-purchase option," "preferential right to purchase," "first option to buy," "preference as purchaser," and "independent privilege." 3 Eric Mills Holmes, *Corbin on Contracts*, §§ 11.3, n. 1, 11.4 (revised ed. 1993). None comes close to the vague statement contained in the contract in this matter that Ikon is "willing to consider renegotiation."

Unable to point to any specific language within the contract granting a right of first refusal, Ikon urges this Court to look to external evidence to establish the parties' intention to include such a right. Ikon argues that the Court may do so because the contract is ambiguous. Ikon's argument, however, requires this Court to declare all parts of the contract related to cancellation ambiguous merely because of the easily resolved conflict discussed above between the printed form that states that the contract is "noncancelable"

and the typewritten addendum that lays out the terms for cancellation on the assumption that the contract may be "canceled for any reason." But such an argument defies logic. It would require this Court to construe that which is clear and unambiguous on its face. There simply is nothing ambiguous in the phrase "[Ikon] will consider renegotiations of the cost per copy pricing to match competitor bids." A court may not create ambiguities by distorting contractual language that may otherwise reasonably be interpreted. *Sonoma Mgmt.*, 70 S.W.3d at 479.

"The parol evidence rule prohibits evidence of prior or contemporaneous agreements that vary or contradict the terms of an unambiguous and complete contract absent fraud, common mistake, accident or erroneous admission." *Kassebaum v. Kassebaum*, 42 S.W.3d 685, 693 (Mo. App. 2001). The contract term regarding Ikon's "willing[ness] to consider renegotiation of the cost per copy pricing to match competitor bids" was not ambiguous. Ikon does not allege fraud, common mistake, accident, or erroneous admission. The parties in this case spent a month negotiating the terms of the agreement and intended for it to be the complete and final agreement between the parties. *See Poelker v. Jamison*, 4 S.W.3d 611, 613 (Mo. App. 1999) (noting that if a document "appears to be a complete agreement on its face, it is conclusively presumed to be a final as well as a complete agreement between the parties"). Extrinsic evidence, therefore, is not admissible to create a right of first refusal that does not exist on the face of the contract.

We agree with the district court that the terms of the contract did not require Bristol-Myers to give Ikon a right of first refusal prior to cancelling the contract. Bristol-Myers had the right to terminate the contract subject only to the payment of the appropriate cancellation fee.

### III.

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of Bristol-Myers.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*